## McMATH CO. v. STATEN.

### No. 2567.

Court of Civil Appeals of Texas. El Paso.
Oct. 1, 1931.

Rehearing Denied Oct. 29, 1931.

H. D. Stringer and R. A. D. Morton, both of El Paso, for plaintiff in error.

Jos. M. Nealon and J. M. Goggin, both of El Paso, for defendant in error.

PELPHREY, C. J.

This action resulted from a collision between the automobile of defendant in error and a motortruck belonging to plaintiff in error at the intersection of Montana and Austin streets in the city of El Paso, Tex., during the month of April, 1930.

Defendant in error alleged that, while she was driving her automobile in an easterly direction along Montana street, the agent of plaintiff in error, while acting within the scope of his employment, passed her in the motortruck of plaintiff in error, and at the intersection of Montana and Austin streets made a U turn in front of her without first ascertaining whether there was sufficient space for such movement to be made with safety and without giving any visible or audible sign of his intention of making such turn; that she ran into the motortruck, causing personal injuries to herself and demolishing her automobile, to her damage in the sum of $8,450.

In addition to a general demurrer, special exceptions and a general denial, plaintiff in error specially pleaded contributory negligence, failure to keep a lookout, failure to have proper control of her automobile, excessive rate of speed, failure to apply her brakes, failure to use the means at hand by turning her car and thereby avoiding the accident, that defendant in error was guilty of negligence in attempting to pass the motor-truck at a rate of speed in excess of 15 miles per hour, and that the real damage sustained by her resulted from her failure to use proper care after the collision in preventing her automobile from running into the retaining wall on the north side of Montana street, which was the proximate cause of her injuries.

The case was submitted to a jury, and in answer to special issues it found: (1) That plaintiff in error's driver attempted to make a U turn without first ascertaining whether there was sufficient space for such movement to be made in safety; (2) that his failure so to do was a proximate cause of the collision; (3) that the driver of the motortruck failed to give a visible or audible signal of his intention to turn; (4) that such failure was a proximate cause of the collision; (5) that defendant in error was not going at a rate of speed in excess of 20 miles per hour; (6) that defendant in error could not have avoided the collision by applying her brakes or turning her car; (7) that the damage to her car was $500 and to her person, $2,000; (8) that defendant in error did not fail to use ordinary care in stopping or turning her car before striking the wall after the collision; (9) that defendant in error did not attempt to pass plaintiff in error's truck at a greater speed than 15 miles per hour; (10) that the collision was avoidable; (11) that defendant in error did not fail to keep a proper lookout; (12) that defendant in error did not fail to have her car under control; and (13) that plaintiff in error's truck was not being operated at a rate of speed in excess of 18 miles per hour.

Upon the above findings the court rendered judgment in favor of defendant in error for $2,500.

The case is now before this court on writ of error.

### Opinion.

Plaintiff in error's contentions, under the twenty-eight points in its brief, are: (1) That certain objections to the court's charge should have been sustained; (2) that the court erred in overruling its special exceptions to defendant in error's petition; (3) that the evidence is insufficient to support the jury's findings on certain issues; (4) that the court should have instructed a verdict in favor of plaintiff in error as to all damages, except those immediately caused by the collision; (5) that the court erred in giving the supplemental instructions to the jury on the issue of unavoidable accident; (6) that the court erred in permitting the witness Schourup to testify as to statements made at the time by the witness Sorrells; (7) that defendant in error's counsel made an improper argument in discussing the issue of unavoidable accident; (8) that the jury panel should have been dismissed because of the improper examination of one of the veniremen by defendant in error's counsel; (9) that the jury was guilty of misconduct; (10) that the court erred in making, during the examination of one of the jurors upon the hearing of the motion for a new trial, the statement that it was an outrage that juries could be recalled and examined about the manner in which they reached their verdict; (11) that the court erroneously found that there had been no misconduct on the jury's part; (12) and that the $2,000 awarded defendant in error for personal injuries was excessive.

Among others, the court submitted the following issues:

"Question No. 1: Do you find from a preponderance of the evidence that the driver of the truck herein involved attempted to make what is known as a "U" turn without first ascertaining whether there was sufficient space for such movement to be made in safety to vehicles whose movement or operation it reasonably appeared would be affected by such movement of said trucks?

"Question No. 2: Do you find from a preponderance of the evidence that the fact that he did so, if he did, was a proximate cause of the occurrences complained of by the plaintiff?

"Question No. 3: Do you find from a preponderance of the evidence that the driver of the truck complained of made a U-turn and failed to give to other automobile drivers who might reasonably be affected by such turning a plainly visible or audible signal of his intention to so turn?

"Question No. 4: Was the fact that he failed to do so, if he did, a proximate cause of the occurrences complained of by plaintiff?"

The submission of the above issues was objected to as follows: "Because, under the turning statute attempted to be submitted, Questions 1 to 4, inclusive, there is a total failure of the court to submit one of the necessary elements under the article of the law, in that the law means the driver of the turning vehicle is not required to give signals upon making a turn unless it is reasonably apparent to him, at the time he starts to make the turn, that the movement of the other vehicles may be reasonably affected thereby, and the court fails to submit this element, or, if it is submitted at all in Issue 3, as it has been changed by the court, it is .

erroneously submitted and assumes facts against the defendant's driver and imposes a greater burden than the law authorizes."

The article referred to by plaintiff in error reads: "The person in charge of any vehicle upon any public highway before turning, stopping or changing the course of such vehicle shall see first that there is sufficient space for such movement to be made in safety, and if the movement or operation of other vehicles may reasonably be affected by such turning, stopping or changing of course, shall give plainly visible or audible signal to the person operating, driving or in charge of such vehicle of his intentions so to turn, stop or change said course." Pen. Code 1925, art. 801, subd. K.

Our construction of the above statute is that it requires any person in charge of a vehicle upon a public highway to give a plainly audible or visible sign of his intention to turn, stop, or change the course of such vehicle before doing so when the movement or operation of other vehicles may reasonably be affected thereby, but that he may make such turn, stop, or change the course of such vehicle without giving such signal if he first ascertains that there is sufficient space for such movement to be made in safety and that the movement or operation of other vehicles will not reasonably be affected by such turning, stopping, or changing of course.

It will be noted that this statute does not prohibit the making of a turn or the stopping or changing of the course of a vehicle when there is not sufficient space for the movement to be made in safety or even when the movement or operation of other vehicles will reasonably be affected thereby, but merely prescribes that a signal must be given when such a condition exists.

The statute is one of the laws of the road provided by the Legislature to prevent collisions between vehicles on the highways of the state, and we think was intended primarily to protect the other users of the highway rather than the person in charge of the turning, stopping, and course-changing vehicle.

 We are of the opinion that under this article the operator who is contemplating turning, stopping, or changing the course of his vehicle and gives a plainly audible or visible signal of such intention would not be guilty of any infraction of the article merely because he did not ascertain before making the movement whether or not the movement or operation of other vehicles would reasonably be affected thereby. In other words, we think the law imposes on him a duty to signal his intention to turn, stop, or change his course, but allows him to omit giving the signal, if he first ascertains that the movement or operation of other vehicles will not reasonably be affected.

If we are correct in this construction, then the failure to ascertain whether the operation of other vehicles would reasonably be affected could not be the proximate cause of the collision, and question No. 1 was erroneously submitted.

We have concluded that before a person would be guilty of negligence under this article it would be necessary to show that a condition existed at the time he attempted to turn, stop, or change the course of his vehicle which called for a signal on his part; that is, that the movement or operation of other vehicles on the highway would reasonably be affected thereby, and that he, under such conditions, turned, stopped, or changed the course of his vehicle without signalling his intention to do so.

Question No. 3 appears to assume that there were automobile drivers who might reasonably be affected by such turning, or at least does not require the jury to find that there were other vehicles whose movement or operation might reasonably be affected by such turning and therefore does not present the question to the jury properly.

Plaintiff in error's third assignment must be sustained. Plaintiff in error interposed the following objection to the submission of question No. 5: "Question 5 is objected to because there is no evidence to sustain a negative answer thereto, it being an undisputed fact that Mrs. Staten testified that she was going over twenty miles per hour and, in fact, testified that she was traveling twenty-two miles per hour at the time. Said Question 5 should be omitted and in lieu thereof the court should tell the jury that it was established by the evidence of the plaintiff herself that she was traveling in excess of twenty miles per hour, and should follow that instruction with Question 6, which should be in form as follows: Was the fact that plaintiff was traveling in excess of twenty miles per hour a proximate cause or contributing cause of the occurrences complained of?"

The questions objected to were:

"Question No. 5: Do you find from a preponderance of the evidence that the plaintiff herself, at or just before the time of the occurrences complained of, was going at a rate of speed in excess of twenty miles an hour?

"If you answer 'yes' to the preceding question, then answer:

"Question No. 6: Did the fact that she did so, if she did, proximately cause or proximately contribute to cause the occurrences complained of?"

 Plaintiff in error in its brief contends that Mrs. Staten's testimony, wherein she said, "I would say I was going between 20 and 22 miles an hour," and Mrs. Bush's testimony that "I will say she may have been going a little over; I don't remember whether I testified at the other trial that she was going 20 miles or over; no, I won't say that

I didn't say that," was the only evidence in the record relative to the speed at which Mrs. Staten's car was traveling, and that Mrs. Staten's statement as to her rate of speed was an admission and was conclusive as against her, leaving no issue to submit to the jury on the question as to whether she was going in excess of 20 miles per hour or not.

Defendant in error, on the other hand, contends that the way in which her statement as to her speed was framed in connection with her statement that "I was watching the road all the time, straight ahead," shows that she was merely giving her opinion or an estimate of her rate of speed, and therefore she would not be bound thereby, but such opinion should be considered by the jury along with the other facts in arriving at their verdict.

We agree with defendant in error that the testimony of Mrs. Staten as to the speed her car was traveling just before and at the time of the accident was a mere expression of her opinion.

It cannot be successfully disputed that it is impossible for a person riding in an automobile to gauge the exact speed of the automobile without the aid of some mechanical device, such as a speedometer, to indicate the speed. There is no evidence in the record showing that Mrs. Staten had looked at the speedometer, and her own statement was to the effect that she was keeping a lookout and looking straight ahead; therefore the statement that she would say that she was going between 20 and 22 miles an hour was based upon her estimate of the speed of the car.

■■■ While it is the general rule that a party plaintiff testifying in his own behalf as to the existence of a fact is absolutely concluded thereby, unless he makes a correction thereof giving some excuse of mistake, oversight, misunderstanding, or lack of definite recollection, this rule does not cover testimony of a party plaintiff which is but an expression of opinion of the witness, and can in applied only where the witness has testified to a fact. Rowe v. United Rys. Co. of St. Louis, 211 Mo. App. 526, 247 S. W. 443; Southwestern Portland Cement Co. v. Kezer (Tex. Civ. App.) 174 S. W. 661, writ refused; Quanah, A. & P. R. Co. v. Bone (Tex. Civ. App.) 208 S. W. 709, writ refused.

In Southern Surety Co. v. Inabnit (Tex. Civ. App.) 1 S.W.(2d) 412, cited by plaintiff in error, the Eastland court decided on the original hearing that the evidence was sufficient to show that the appellee was being paid $150 per month for his services as pumper at the time of the accident and that the evidence aside from his testimony was sufficient to overcome his opinion that he was being paid as receiver.

On rehearing the court changed its holding and based such action on the fact that it had been in error in construing his testimony as a matter of opinion merely.

We think the effect of that holding was that defendant in error was not concluded by the mere expression of an opinion, but would be so concluded by the statement of a fact.

Plaintiff in error's assignment raising this question is therefore overruled.

Without setting out the evidence in detail, we think there was evidence in the record raising the issue of the rate of speed of Mrs. Staten's car.

We find no error in the court's permitting the jury to allow defendant in error damages in an amount necessary to repair her car. She pleaded that she had been damaged to the extent of $800 by having her car wrecked. There was evidence which would have supported a judgment for more than the amount allowed by the jury, if they had been allowed to measure the damage by the difference in the value of the car before and after the accident, consequently no damage resulted to plaintiff in error.

The court properly overruled plaintiff in error's special exception to the petition of defendant in error.

Plaintiff in error has several assignments questioning the sufficiency of the evidence to support the jury's finding on the different issues. In view of the fact that the case is to be tried anew, we shall not here discuss them.

■ Plaintiff in error moved the court to instruct the jury to return a verdict in its favor, except as to any damage that may have been caused by collision of the truck and car, on the theory that it was not responsible for any damage caused by her car running against the wall after the collision.

Mrs. Staten testified that after the collision the motor of her car was going awfully fast, and the steering wheel was knocked loose.

If that be true, and that condition was caused by the collision, then the subsequent injury to her and to her car could be traced back to the collision, and, if plaintiff in error was guilty of negligence which was the proximate cause of the collision, then it cannot be heard to say that it would not be responsible for that damage. Under such a state of facts the court properly overruled the motion.

■■ Our statute (Pen. Code 1925, art. 794) provides that "all operators of motor vehicles in passing each other on the public highways shall slow down their speed to fifteen miles per hour."

At the request of plaintiff in error, the court submitted the following issue: "Do you find from a preponderance of the evidence that plaintiff attempted to pass the defendant's truck at the time and place involved herein at a rate of speed greater than fifteen miles per hour?"

The court modified the issue by inserting a definition of the word "pass" as follows: "By 'pass' is meant going in opposite directions." Plaintiff in error objected to this modification, and now contends that the word did not call for a definition, and that, if it did, the definition was erroneous.

We find no fault with the court's definition. This statute, along with other articles, was passed to prevent collisions between motor vehicles on the public highway. The only place at which cars could pass each other on the highway when they were not going in opposite directions would be at intersections.

The Legislature in another article (Pen. Code 1925, art. 801, subd. E) has provided that a vehicle approaching an intersection on the public highway shall yield the right of way to a vehicle approaching such intersection from the right of such first-named vehicle, thereby insuring or attempting to insure the safety of vehicles from collision at intersections where the cars are going in other than opposite directions.

These articles which have been designated as the "Law of the Road" were intended to cover all the conditions which might arise in the operation of motor vehicles on the highway, and, it having attempted to regulate the operation of motor vehicles at intersections by another enactment, we think leaves the statute in question applying only to the passing of cars going in opposite directions. If we be correct in this, then the jury should have been informed as to that fact, and the definition given was correct.

The issue of unavoidable accident, when properly submitted, contains a double negative, and would quite naturally be confusing to the ordinary jury. It appears here that the jury became confused and appealed to the court for assistance. We judge from the record that they had decided that the collision was avoidable, but were uncertain as to what effect a "Yes" or "No" answer would have.

The court thereupon withdrew his instruction to answer the issue "Yes" or "No," and instructed the jury that it might answer the same by saying that the accident was either avoidable or unavoidable or in any other way that it might see fit. The manner in which the court instructed the jury that it might answer the issue was not entirely responsive to the issue, and the instruction that they might answer it in any other way that it might see fit was, we think, too broad.

On account of the confusing manner in which the issue must be submitted and the confusion in juror's minds as to how their answer should be framed, we suggest that the jury might be instructed that they might answer the issue by saying the collision or injury was not the result of an unavoidable accident or that the collision or injury was the result of an unavoidable accident. If answered in this manner, the jurors should have no doubt as to the meaning of their answer.

The remaining questions relating to the court's refusal to dismiss the jury panel, argument of counsel for defendant in error, misconduct of the jury, will probably not arise on another trial, and should not be discussed.

Because of the error in the submission of questions 1 to 4, inclusive, the judgment is reversed, and the cause remanded.