## McMATH CO. v. STATEN.
### No. 2801.

Court of Civil Appeals of Texas. El Paso.
April 27, 1933.

Rehearing Dismissed May 11, 1933.

H. D. Stringer and R. A. D. Morton, both of El Paso, for appellant.

Nealon, Hudspeth & McGill and J. M. Goggin, all of El Paso, for appellee.

PELPHREY, Chief Justice.

This is the second appeal of this case, the decision of the court upon the former appeal being reported in 42 S.W.(2d) 649, to which reference is here made for a statement of the nature of the suit and the pleadings of the parties.

The present trial was before a jury, being submitted on forty special issues, which, together with the answers of the jury thereto, are as follows:

"Question No. 1: Do you find from a preponderance of the evidence that the driver of defendant's truck failed to keep such a lookout for persons and vehicles on the street in his vicinity as a person of ordinary prudence would have kept under the same or similar circumstances? Answer: Yes.

"Question No. 2: Do you find from a preponderance of the evidence that the driver of such truck was negligent in failing to keep such lookout, if he did fail? Answer: Yes.

"Question No. 3: Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the damages, if any suffered by plaintiff by reason of the collision between plaintiff's automobile and defendant's truck? Answer: Yes.

"Question No. 4: Do you find from a preponderance of the evidence that, at the time that the driver of defendant's truck made the U-turn complained of by plaintiff, there was not sufficient space for the driver of such truck to make such turn in safety? Answer: Yes.

"Question No. 5: Do you find from a preponderance of the evidence that, before making the U-turn complained of, it appeared to the driver of defendant's truck that plaintiff's car might reasonably be affected by such turning? Answer: No.

"Question No. 6: Do you find from a preponderance of the evidence that the driver of the truck herein involved attempted to make such U-turn without seeing first that there was sufficient space for such movement to be made in safety to vehicles, if any, whose movements or operation it reasonably appeared to the driver of the truck would be affected by such movement of his truck? Answer: Yes.

"Question No. 7: Do you find from a preponderance of the evidence that the fact that he did so turn, without seeing first that there was sufficient space was a proximate cause of the collision between plaintiff's automobile and defendant's truck? Answer: Yes.

"Question No. 8: Do you find from a preponderance of the evidence that the driver of defendant's truck complained of failed to give to plaintiff a visible or audible signal of his intention to so turn? Answer: Yes.

"Question No. 9: Do you find from a preponderance of the evidence that the fact that he failed to give such signal, if he did fail, was a proximate cause of the occurrences complained of by the plaintiff? Answer: Yes.

"Question No. 10: Do you find from a preponderance of the evidence that the plaintiff herself, at or just before the time of occurrences complained of, was going at a rate of speed in excess of twenty miles an hour? Answer: Yes.

"Question No. 11: Did the fact that she did so, if she did, proximately cause or proximately contribute to cause the occurrences complained of? Answer: No.

"Question No. 12: Do you find from a preponderance of the evidence that the plaintiff could have applied her brakes or turned her car and have avoided the collision with the truck? Answer: No.

"Questions Nos. 13 and 14 not answered.

"Question No. 15: Do you find from a preponderance of the evidence that the collision of plaintiff's automobile with defendant's truck and the injuries and damages, if any, to plaintiff were not the result of an unavoidable accident? Answer: Yes.

"Question No. 16: Do you find from a preponderance of the evidence that the plaintiff suffered the injuries complained of to her back, knee, side and nervous system, or some of them, proximately caused by the occurrences complained of by plaintiff? Answer: Yes.

"Question No. 17: What sum, if paid in

cash now, do you find from a preponderance of the evidence, would compensate the plaintiff for the damages suffered by her, if any, by reason of such injuries, if any, as you find she suffered to her back, knee, side and nervous system, proximately caused by the occurrences complained of by plaintiff? Answer: $5,000.00.

"Question No. 18: Do you find from a preponderance of the evidence that the plaintiff suffered damage to her automobile, proximately resulting from her collision with the defendant's truck? Answer: Yes.

"Question No. 19: What amount do you find from a preponderance of the evidence will reasonably compensate the plaintiff for such damage, if any? Answer: $500.00.

"Question No. 20: Do you find from a preponderance of the evidence that plaintiff herself, at or just before the time of the accident, was going at a dangerous rate of speed? Answer: No.

"Questions Nos. 21 and 22 not answered.

"Question No. 23: Could the plaintiff, by the use of ordinary care and using the means at hand, after the collision with the truck, have avoided striking the wall? Answer: No.

"Questions Nos. 24 to 29, inclusive, not answered.

"Question No. 30: Do you find from a preponderance of the evidence, at the time involved herein, plaintiff, Mrs. Staten, failed to have her automobile under such control as would a person of ordinary prudence under the same or similar circumstances? Answer: No.

"Questions Nos. 31 and 32 not answered.

"Question No. 33: Do you find from a preponderance of the evidence that plaintiff failed to keep such a lookout ahead as a person of ordinary prudence would have kept under the same or similar circumstances? Answer: No.

"Questions Nos. 34 and 35 not answered.

"Question No. 36: Do you find from a preponderance of the evidence that plaintiff attempted to pass the defendant's truck at the time and place involved herein at a rate of speed greater than fifteen miles per hour? Answer: No.

"Question No. 37 not answered.

"Question B–1: Do you find from a preponderance of the evidence that immediately before the collision between plaintiff's automobile and defendant's truck that the driver of defendant's truck, as he was approaching the intersection of Montana street and Austin street, failed to give a plainly audible or visible signal of his intention to make a U-turn? Answer: Yes.

"Question B–2: If the answer of Question B—1 is 'Yes', but not otherwise, then answer: Was the failure, if any, of the driver of defendant's truck to give a visible or audible signal as he was approaching said intersection, and before making a U-turn, if you find that he did fail to give such visible or audible signal, negligence as that term has hereinbefore been defined to you in this charge? Answer: Yes.

"Question B–3: If the answer to Question B–1 is 'yes' and the answer to Question B–2 is 'yes,' but not otherwise, then answer: Was the failure of the driver of the truck to give a visible or audible signal as he was approaching the intersection of Montana street and Austin street, and before making the U-turn, if you find that he did fail to give any visible or audible signal, a proximate cause, as that term has hereinbefore been defined, of the damage, if any, suffered by plaintiff as a result of said collision? Answer: Yes."

Upon these findings the trial court rendered judgment against appellant for $5,500, and it has appealed.

## Opinion.

Appellant presents twenty-five grounds of error in its brief, but a consideration of eighteen of them is objected to by appellee on the ground that they do not conform to the rules of briefing.

Appellant's ground of error No. 1 reads: "The court erred in overruling defendant's objection to questions Nos. 4 to 9, inclusive, in the main charge of the Court relating to the turning statute, for the reasons set out in said written objection."

Appellee objects to the consideration of this ground of error for the reason that it is multifarious, too general and indefinite, and tries to incorporate by reference a bill of exceptions. Appellant, on the other hand, contends that by the amendment to articles 1757 and 1844, passed by the Forty-Second Legislature, chapters 45 and 75 (Vernon's Ann. Civ. St. arts. 1757, 1844), counsel are left free to present their briefs in the manner they conceive will be most likely to have effect with the appellate courts.

Article 1757, as it appears in the Revised Statutes of 1925, reads: "In all cases taken to the Supreme Court by writ of error, the briefs and arguments filed in the Courts of Civil Appeals shall be submitted to the Supreme Court; and, in addition thereto, the attorney for either party may file additional briefs, under such rules and regulations as the Supreme Court may prescribe."

Article 1844, as it existed before the amendment, reads: "Before he takes the transcript from the clerk's office, the appellant or plaintiff in error shall file with the Clerk of the Court below all assignments of error distinctly specifying the grounds on which he relies. Where a motion for new trial has been filed, the assignments therein

shall constitute the assignments of error and need not be repeated by filing separate assignments of error. All errors not distinctly specified are waived, but an assignment shall be sufficient which directs the attention of the Court to the error complained of."

Article 1757, as amended, reads: "In all cases appealed to the Court of Civil Appeals and/or taken to the Supreme Court, it shall be sufficient if said briefs contain the following:

"1. A statement as to the nature and result of the suit.

"2. The alleged error or errors upon which the appeal is predicated.

"3. The authorities relied upon.

"4. A statement and/or argument on the errors assigned. Provided, however, that the Supreme Court may adopt rules with reference to the form and time of filing of briefs generally, but not inconsistent with the provisions hereof."

Article 1844, as amended, reads: "The appellant or plaintiff in error need not file assignments of error with the Clerk of the Court below but he may embody in his brief in the appellate court all assignments of error distinctly specifying the grounds on which he relies. All errors not distinctly specified are waived, but an assignment shall be sufficient which directs the attention of the Court to the error complained of. The appellee or defendant in error need not file his cross-assignments of error with the Clerk of the Court below but may embody them in his brief filed in the appellate court."

It was well settled in this state before the above amendments that assignments of error were insufficient which were not directed at some specific error, and which were either general, indefinite, or multifarious.

It was equally well settled that assignments were insufficient which merely referred to a bill of exceptions or a certain paragraph of a motion for a new trial. 3 Tex. Jur. § 593 et seq. We are of the opinion that the Legislature did not intend by the enactment of the amendments to change those well-established rules of briefing. While it is true that, in amending article 1757, the Legislature laid down the requisites of briefs in the Courts of Civil Appeals and the Supreme Court, yet, in amending article 1844, at the same session, it used, in reference to assignments of error, practically the same language of the old article and under which the courts had held that general, indefinite, and multifarious assignments were insufficient.

In support of this holding, we find that the following decisions have considered objections to assignments: Traders' & General Ins. Co. v. Powell (Tex. Civ. App.) 44 S.W.(2d) 764; McMullen v. Parker (Tex. Civ. App.) 45 S.W.(2d) 1011; Kress & Co. v. Brashier et al. (Tex. Civ. App.) 50 S.W.(2d) 922, 923; Bustamante v. Haynes (Tex. Civ. App.) 55 S.W.(2d) 137; International-Great Northern R. Co. v. Miner (Tex. Civ. App.) 54 S.W.(2d) 216.

In Traders' & General Ins. Co. v. Powell the objection was made to a proposition which was based upon eleven assignments of error, and the court held that the assignments relating to different and unrelated questions would not be considered.

In McMullen v. Parker an assignment recited that the court erred in overruling defendant's special exceptions 1 to 10. The court said: "It is plainly multifarious and too general to invoke consideration on appeal, since the various exceptions referred to raise an equal number of different questions of law."

In Kress & Co. v. Brashier et al. appellant had grouped three of his assignments, and submitted them without propositions to support them. The court said: "Under every rule of briefing they could and should be disregarded on appeal."

In Bustamante v. Haynes, 55 S.W.(2d) 137, 141, the San Antonio Court of Civil Appeals, in a case in which appellants contended that the amendment permitted the grouping of assignments, said: "A rational analysis discloses that the amendment to article 1757 prescribes the same requisites of a brief that existing rules prescribe, except that it omits specific requirement of 'propositions or points' of law, such as are prescribed in the rules. * * * So, when rationally construed, the statute simply provides that a brief shall be deemed sufficient when it embraces the four requisites therein prescribed, arranged in accordance with the form prescribed by the Supreme Court. It would be absurd to say that every litigant may follow his own judgment or caprice in the form or arrangement of the requisites prescribed by the statutes, without reference to or notice of uniform rules prescribed therefor by the power designated by the statute for that purpose."

The Beaumont Court of Civil Appeals in International-Great Northern R. Co. v. Miner, 54 S.W.(2d) 216, also adhered to the rule that assignments which were duplicitous or multifarious should not be considered.

The decisions were all announced subsequent to the taking effect of the amendment in question, and therefore those courts were of the opinion that the amendment did not have the effect claimed by appellant here.

The above-quoted ground of error is set out as an example of the manner in which appellant has assigned the errors complained of. Despite the fact that we might properly refuse to consider appellant's assignments, we shall, in accordance with our previous liberal practice in such matters, in order that

the controversy may be disposed of on its merits rather than upon purely technical grounds, and regardless of the fact that in doing so we will be called upon to study portions of the record which ordinarily an appellate court should not be required to do, consider the assignments.

It will be seen that in appellant's first assignment it questions the correctness of the manner in which the trial court submitted the negligence of appellant's driver based upon subdivision K of article 801, of the Penal Code, which article is set forth in our former opinion, 42 S.W.(2d) 649, 651. This ground of negligence, as is suggested by the assignment, was submitted by the court in issues 4 to 9, inclusive.

Issue No. 4 inquired whether there was sufficient space for the turn to be made in safety; No. 5, whether it appeared to the driver of the truck, before making the turn, that appellee's car might reasonably be affected thereby; No. 6, whether the driver of the truck attempted to make the turn without first seeing that there was sufficient space for it to be made in safety to vehicles, if any, whose movements it reasonably appeared to the driver would be affected; No. 7, whether the driver's failure to see that there was sufficient space was a proximate cause of the collision; No. 8, whether the driver gave a visible or audible signal of his intention to turn; and No. 9, whether such failure to give a signal was a proximate cause of the occurrences complained of.

The objections urged in the trial court to these issues occupy almost three pages of the transcript, and have been copied into appellant's brief.

In our former opinion, our holding in construing the statute in question was:

"Our construction of the above statute is that it requires any person in charge of a vehicle upon a public highway to give a plainly audible or visible sign of his intention to turn, stop, or change the course of such vehicle before doing so when the movement or operation of other vehicles may reasonably be affected thereby, but that he may make such turn, stop, or change the course of such vehicle without giving such signal if he first ascertains that there is sufficient space for such movement to be made in safety and that the movement or operation of other vehicles will not reasonably be affected by such turning, stopping or changing of course. * * *

"We have concluded that before a person would be guilty of negligence under this article it would be necessary to show that a condition existed at the time he attempted to turn, stop, or change the course of his vehicle which called for a signal on his part; that is, that the movement or operation of other vehicles on the highway would reasonably be affected thereby, and that he, under

such conditions, turned, stopped, or changed the course of his vehicle without signalling his intention to do so."

■ We are of the opinion that issues 4, 8, and 9, and the findings of the jury thereon clearly establish actionable negligence on the part of appellant's driver under that construction. In answer to issue No. 4, the jury found that at the time the turn was made there was not sufficient space for it to be made in safety; in answer to issue No. 8, they found that the driver of appellant's truck failed to give a visible or audible signal of his intention to turn; and in answer to issue No. 9 that his failure to give a signal was the proximate cause of the occurrences complained of.

■ If we be correct in this, then the fact that other issues were erroneously submitted will not justify a reversal; therefore the objections of appellant to issues Nos. 5, 6, and 7 call for no discussion.

■ We cannot agree with appellant's contention that issues 1, 2, and 3 were erroneously submitted because the duty of appellant's driver is covered by the statute, and therefore no common-law duty could exist.

■ We understand the rule to be that statutory requirements with respect to the operation of motor vehicles do not abrogate the common-law duties, but merely prescribe additional duties. 42 C. J. § 583, pp. 883, 884.

■ The objection interposed to issue No. 8 that it was not preceded by an issue requiring a finding that a condition existed which called for the giving of a signal is without merit.

Issue No. 4, and the finding thereon, clearly showing the existence of such condition.

Grounds of error 6–a and 6–b must also be overruled. Andrews v. Wilding (Tex. Civ. App.) 193 S. W. 192 (writ refused); Freeman v. Courtney (Tex. Civ. App.) 134 S. W. 260 (writ refused); Mortimer v. Jackson (Tex. Civ. App.) 155 S. W. 341, affirmed (Tex. Com. App.) 206 S. W. 510.

■ Special issue No. 17, as submitted, reads:

"What sum, if paid in cash now, do you find from a preponderance of the evidence, would compensate the plaintiff for the damage suffered by her, if any, by reason of such injuries, if any, as you find she suffered to her back, knee, side and nervous system, proximately caused by the occurrences complained of by plaintiff?"

"In estimating such damages, if any, if you find that the plaintiff suffered mental and physical pain, proximately resulting from the occurrences complained of by plaintiff, you may take that into consideration and allow such sum which, if paid in cash now, you find will reasonably compensate

her for such mental and physical pain, if any, which you find she has suffered in the past; proximately resulting from the occurrences complained of; and if you find that the plaintiff will suffer mental and physical pain in the future, proximately resulting from the occurrences complained of by plaintiff, you may take that into consideration and allow such sum which you find, if paid in cash now, would reasonably compensate her for such mental and physical pain, if any, as you find she will suffer in the future, proximately resulting from the occurrences complained of."

Appellant asserts that the charge is in the nature of a general charge; that it imposes on the jury the duty of making further findings of fact; that by referring to general damages it would authorize an award of damages for loss of earning capacity or loss of time from work; that it necessarily resulted in the awarding of double damages; and that it presented no method of calculating the present value.

In support of its contention as to the charge authorizing a double recovery, appellant cites us to International-G. N. R. Co. v. King (Tex. Com. App.) 41 S.W.(2d) 234.

An examination of that case reveals that the trial court, in submitting the issue of the amount of damages, requested a separate finding from the jury on five separate elements of damage.

The objection was made that the charge would permit a double recovery and tend to confuse the jury. The Commission of Appeals held that the charge was subject to the objection made, but in the discussion of the case quoted Chief Justice James in Texas & N. O. R. Co. v. McCraw, 43 Tex. Civ. App. 247, 95 S. W. 82, 86, in which he said: "The rule applied by the Supreme Court in the Butcher [98 Tex. 462, 84 S. W. 1052] and Nesbit [40 Tex. Cr. App. 209, 88 S. W. 891] Cases is understood to be that a charge is defective, not necessarily because it suggests to the jury the various subjects or elements of damages they may consider, but where it mentions the subjects in such a way and in such a connection as is calculated to lead them to treat items that enter into the same subject as separate and distinct elements of damage. There could be no objection to a charge which authorizes recovery for physical suffering, which in the same connection properly presents and explains the different matters which would come under that head for consideration. So, also, with mental suffering or diminished earning capacity. But when these matters are presented in such a way as to appear to treat them as distinct and independent items of damage, the charge is objectionable."

It will be seen from the above that the charge there held erroneous was an entirely different one from the one here under consideration, and that the quotation from Chief Justice James would show that the charge here was not subject to the objection interposed. See, also, Breckenridge Ice & Cold Storage Co. v. Hutchens (Tex. Civ. App.) 260 S. W. 684 (writ of error dismissed); Farmers' & Mechanics' National Bank v. Marshall (Tex. Civ. App.) 4 S.W.(2d) 165 (writ of error dismissed).

We understand the rule as to calculating the present value or the rate of discount to be allowed on judgments to apply to cases arising under the Workmen's Compensation Act (Vernon's Ann. Civ. St. art. 8306 et seq.) and the Federal Employers' Liability Act (45 USCA §§ 51–59), and not to cases where the damages are incapable of exact ascertainment such as this.

Nor do we think the use of the word "occurrences" as used in the issues confused the jury or caused any harm to appellant.

In appellee's pleading we find this allegation: "And that the said servant of the defendant, The McMath Company, prior to and at the time of making or attempting to make said change of course negligently failed to keep a reasonable or proper lookout for the movement of plaintiff's automobile or other vehicles in the course of traffic." Therefore appellant's contention that issues Nos. 1, 2, and 3 were not raised by the pleading is untenable.

We find no error in the court's action in defining the word "contribute" in connection with issue No. 10, at the request of the jury.

Grounds of error 12–a, b, c, d, and e, all relate to misconduct on the part of the jury.

Appellant asserts that the jury was guilty of such misconduct in that personal experiences of one of the jurors were related to the jury; that the jury first decided that they wanted plaintiff to prevail, and then formulated their answers to accomplish that result; that they discussed attorney's fees; that the question of liability insurance was discussed; and that the jurors discussed their personal experiences with reckless drivers.

It would prolong this opinion to an unreasonable length to here attempt to quote the testimony of the different jurors on this question, and we shall content ourselves by saying, merely, that from a careful study of the testimony we have concluded that there was no abuse of the discretion placed in the trial court by the statute. There was evidence before the court upon which he could find that, if any of the matters complained of by appellant really happened, they took place after the jury had decided upon its verdict.

There is abundant evidence, also, upon which the court could have properly found that the verdict was in no way affected by such happenings.

We cannot agree that the verdict of the jury in awarding appellee the sum of $5,000 for her injuries was excessive, under the facts.

We have given consideration to the many questions presented by appellant, and have concluded that no reversible error is shown.

The judgment is affirmed.