## HENRY v. WALTER BENNETT, Inc.
### No. 3871.

Court of Civil Appeals of Texas. El Paso.
Nov. 16, 1939.

Rehearing Denied Dec. 21, 1939.

Jones & Jones, of Marshall, for plaintiff in error.

Stinchcomb, Kenley & Sharp, of Longview, and Joe W. Sheehy and Ramey, Calhoun & Marsh, all of Tyler, for defendant in error.

WALTHALL, Justice.

This suit was brought by plaintiff in error, Earl Henry, against Walter Bennett, Inc., in which he seeks to recover damages for personal injuries alleged to have been sustained by him in an automobile accident.

Plaintiff in error being plaintiff in the suit and defendant in error being defendant in the suit, we will refer to them, respectively, as plaintiff and defendant.

The case was tried on plaintiff's third amended original petition and defendant's third amended answer. The case was tried to a jury and submitted upon special issues. The jury made answers to the questions submitted, and judgment was rendered on the verdict as rendered and received by the trial court.

The record is extensive, the evidence covering more than 450 pages. This is the second trial of the case.

Plaintiff pleaded, and the evidence shows and it was so found by the jury, that at the time involved here defendant was engaged in handling and selling Ford automobiles which were shipped to defendant from the factory of the Ford Motor Company, whether the cars were new or had been used and repossessed by such company, such repossessed cars commonly called "used cars"; that at the time stated plaintiff purchased from defendant a certain 1936 Model Ford V-8 automobile; in the sale defendant was acting by and through

its agent and employee Earl Bullock; that in the sale to plaintiff Earl Bullock represented to plaintiff that the car was comparatively a new car; that it was in excellent mechanical shape and that defendant warranted and guaranteed the car against all manner of mechanical defects, and that plaintiff relied on such representations. In the alternative, plaintiff pleaded that defendant sold and gave to him what is commonly known in the Ford automobile trade as a "new car guarantee," a car consisting of a warranty of mechanical perfection for a period of 90 days, or until the car had been driven a distance of 4,000 miles, all of which was fully explained to plaintiff by the agent and employee Bullock.

Plaintiff alleged that five days after the purchase of said car and at a time when he had driven said car only a short distance, he was riding in said car on the highway between Lanier and Linden, Texas, and while driving said car "at a reasonable rate of speed," the front fender of the car suddenly dropped down upon the right front wheel of the car rendering it impossible for him to steer the car and causing the car to veer into a ditch, wrecking the car and causing the injuries complained of.

Plaintiff states the defective condition of the car which he alleges caused the slumping down of the car, among the defects a previously broken or partially broken spring upon the main or lower leaf near the right front wheel, and that such defective spring and other defects mentioned proximately contributed to cause the injuries complained of.

Plaintiff alleges that the break in the spring and the other defects described were present at all times before, at the time and after the purchase of the car, and were present at the time the representation and warranties above stated were made.

In the alternative, plaintiff alleged that the wrecking of the car and the resulting injuries to him were proximately caused by the following acts and omissions of defendant and its employees, which constitute negligence, and each of which proximately caused plaintiff's said injuries: (a) Failure to inspect the said car for any defects; (b) permitting plaintiff to purchase said car, knowing that he would rely upon the said representations, and by ordinary care might have known of the said defective condition of the car; (c) in turning over to plaintiff the car with the defective spring and other defects, when such defects could have been foreseen by ordinary care.

Plaintiff states specifically the injuries he sustained and the reasonable and necessary hospital, medical and doctors' bills which he necessarily incurred by reason of his injuries, for which he sues.

The Home Insurance Company intervened, stating that it issued its policy of collision insurance to plaintiff with a mortgage clause in favor of the Universal Credit Company with a stated deductible clause and covering the car in question, and alleged that as a result of the wreck of said car intervener sustained a damage and loss of $445, and that by a subrogation agreement with plaintiff Henry, it asks judgment against defendant for its said loss, with interest.

Defendant answered by general demurrers to plaintiff's petition and to the intervention, and by special exceptions, by general denial and special denials, and by special matters of defense.

Defendant further answered that at the time of the accident plaintiff was negligent in operating the car in excess of forty-five miles per hour; was negligent in operating the car at a high and dangerous rate of speed under the circumstances then existing.

On special issues submitted the jury found:

1. Earl Bullock represented to plaintiff in negotiating the sale of the car that "it was in the same mechanical condition as a new car of the make and model."

2. Earl Bullock did not give to plaintiff in negotiating the sale of the car a new car guarantee.

3. Plaintiff relied on said representations of Bullock in purchasing the car.

4. Bullock, in making said representations, was not acting within the scope of his authority as an agent or employee of defendant.

5. In making said representations Bullock was acting within the apparent scope of his authority as agent or employee of defendant.

6. At the time the car in question was sold to plaintiff "the spring was partially broken at the point where it later broke in two parts."

7. At the time the car was sold to plaintiff, the defendant, through its agents or

employees, did not know of said partially broken spring.

8. Defendant, through its agents or employees, could not have discovered said partially broken spring on a reasonable inspection of the same.

9. Defendant, through its agents or employees, did not fail to inspect the spring which broke on the car in question before they sold and delivered it to plaintiff.

(No answer to questions 10 and 11, inquiring whether a failure to inspect, if any, as in No. 9, was negligence and a proximate cause of the injuries to plaintiff.)

12. The complete breaking of the spring on the car in question was a proximate cause of plaintiff's injuries.

13 and 14. The action of defendant in selling and delivering to plaintiff the car in question with said broken spring was not negligence nor a proximate cause of the injuries to plaintiff.

15 and 16. Immediately prior to the wreck (of the car) plaintiff was driving the car at a rate of speed in excess of 45 miles per hour, which rate of speed was a proximate cause of the wreck.

17, 18 and 19. Immediately prior to the time of the wreck plaintiff was operating his car at a high and dangerous rate of speed under the circumstances then existing, which operation was negligence and a proximate cause of the wreck.

20. Immediately prior to the wreck of the car the right tube of the car did not blow out.

(21. Inquiring whether the blowing out of the tube, if any, was the sole proximate cause of the injuries to plaintiff, was not answered.)

22, 23 and 24. In purchasing the car in question plaintiff did not rely solely on his own inspection as to the mechanical condition of the car, nor on the inspection made by Claud Sizmore, nor on the inspection jointly made by the two.

25, 26 and 27. At the time of the purchase of the car in question plaintiff did not know of the partially broken spring, if any, nor could he have discovered said partially broken spring, if any, on a reasonable inspection. nor did plaintiff fail to inspect the front spring.

(28 and 29. Inquiring whether failure to inspect, if any, was negligence, and a proximate cause, not answered.)

29–A. (No answer)

30. It was not an unavoidable accident.

31 and 32. The jury assessed plaintiff's damages for his injuries at $5,000, and $300 for his doctor, medicine and hospital bills.

The court overruled plaintiff's motion for judgment on the findings of the jury and for judgment non obstante veredicto, and to intervener, and rendered judgment for defendant.

The court overruled plaintiff's motion for a new trial, and plaintiff presents this appeal by writ of error.

Defendant in error in this appeal very earnestly objects to any consideration by this Court of any of the seven assignments of error found in plaintiff in error's brief in this case or any of the propositions thereunder, for the reasons asserted, that each of the assignments fails to comply with the statute and rules for briefing cases, in that each of the assignments fails to distinctly point out some specific error or ruling of the trial court; that each assignment is too general, vague, indefinite and uncertain; that each assignment is multifarious and duplicitous; and because there is no showing in the record that plaintiff properly presented said objections and exceptions to said issues to the trial court, as provided by Article 2185, R.C.S.; that for the reasons stated the assignments do not comply with or conform to the statute, and particularly to Rules 24, 25 and 26.

Article 2185 of the Revised Civil Statutes provides: "The charge shall be in writing, signed by the judge, filed with the clerk, and shall be a part of the record of the cause. It shall be prepared after the evidence has been concluded and shall be submitted to the respective parties or their attorneys for inspection, and a reasonable time given them in which to examine and present objections thereto, which objections shall in every instance be presented to the court before the charge is read to the jury, and all objections not so made and presented shall be considered as waived. Failure of the Court to give reasonable time to the parties * * * shall be reviewable upon appeal upon proper exception. The judge shall so frame his charge as to distinctly separate questions of law from questions of fact, and not therein comment on the weight of the evidence, and so as to instruct the jury as to

the law arising on the facts, and shall only submit controverted questions of fact."

Assignment No. One complains that the trial court erred in overruling and not sustaining plaintiff's motion for judgment notwithstanding the verdict in answer to issues 15, 16, 17, 18 and 19, in that the answers are not supported by the pleadings nor by the evidence; and for the further reason that the answers to said issues are contrary to the undisputed evidence; or, in the alternative, that the answers to said issues are contrary to the overwhelming weight and preponderance of the evidence; and for the further reason that said issues and the answers thereto are immaterial, due to the findings on issues of warranty. It is specifically provided by Article 2185, R.S., that all objections and exceptions to the court's charge shall be presented to the trial court before the charge is submitted to the jury, and when not so submitted are waived. Tarry Warehouse & Storage Co. v. Duvall, Tex.Sup., 115 S.W.2d 401; Texas Coca Cola Bottling Co. v. Lovejoy, Tex.Civ.App., 112 S.W.2d 203; Hartford Fire Ins. Co. v. Clements, Tex.Civ.App., 34 S.W.2d 355. Assignment No. One is too general, in that it does not state in what respect the issues are not supported by the evidence, nor how the answers to the issues are contrary to the undisputed evidence, nor how the answers are contrary to the overwhelming weight or preponderance of the evidence, nor in what manner the answers to the issues are immaterial. Assignment No. One is multifarious and duplicitous. McMath v. Staten, Tex.Civ.App., 60 S.W.2d 290; McMullen v. Parker, Tex.Civ.App., 45 S.W.2d 1011; Foster v. Gossett, Tex.Civ.App., 17 S.W.2d 469.

Assignment No. Two complains that the trial court erred in overruling and not sustaining plaintiff's motion for judgment upon the verdict for the reason that the answers to the special issues submitted constituted and were a verdict for the plaintiff and entitled him to a judgment. The legal effect of the assignment is simply to state that the court erred in not rendering judgment upon the verdict in plaintiff's favor.

An assignment of error is liberally construed, but an appellate court is without jurisdiction to consider errors not within the scope of the assignment. Byrnes v. Morris, 53 Tex. 213; Fisk v. Wilson, 15

Tex. 430, 435. The cases of Choate v. San Antonio & A. P. R. Co., 91 Tex. 406, 44 S.W. 69, and Hanson v. Haymann, Tex.Civ. App., 280 S.W. 869, are cited in 3 Tex. Jur. p. 801 under par. 568, for the statement that, "an assignment of error in refusing to instruct a verdict for defendant does not present the question whether the verdict is supported by sufficient evidence or is against the weight and preponderance of the evidence." The assignment does not point out the findings of the jury to the special issues submitted that would entitle plaintiff to judgment. It is too general and indefinite to justify its consideration.

Assignments 3, 4, 5, 6 and 7 present objections to charges submitted to the jury. It is not made to appear that objections and exceptions to the charges were presented to the trial court before the charges were submitted to the jury, and under Article 2185 objections not so presented are waived.

The errors relied upon are not separately and distinctly specified, but each assignment, other than No. 2, embraces more than one specification of error, and is therefore duplicitous or multifarious, and for that reason they cannot be considered.

Acts 1913, 33rd Legislature, p. 276, Chap. 136, provides that, "Where a motion for new trial has been filed, the assignments therein shall constitute the assignments of error and need not be repeated by filing separate assignments of error." We recognize the confusion that has got into the opinions of the Courts of Civil Appeals by reason of the necessity of filing a motion for a new trial and assignments of error therein, but as suggested by 3 Tex. Jur. p. 246, par. 163, no better rule can be found than that suggested by the Commission of Appeals in Phillips Petroleum v. Booles, Tex.Com.App., 276 S.W. 667, that is, to file in all cases a motion for new trial presenting those points which have arisen to the time, and thereafter to file in the trial court supplemental assignments of error, presenting only those errors not covered by the motion, and as indicated by Rule 71a. Appellant in the instant case filed a motion for new trial, but does not submit the grounds of error indicated therein as his assignments of error in his brief. The grounds of error in the motion for new trial are similar in subject matter to the assignments of error in the brief. The first three grounds of error in the mo-

tion for new trial, stated in three separate paragraphs, are that the verdict of the jury is contrary to the law, the verdict is contrary to the evidence, the verdict is contrary to the overwhelming weight and preponderance of the evidence. Other grounds are multifarious, as in the assignments of error discussed. Other grounds in the motion are to issues submitted in the court's main charge, are found only in the motion and are not referred to or presented as assignments of error in the motion or elsewhere.

[redacted] We have concluded that, there being no assignment of error we can consider, the propositions thereunder may not be considered. Columbian Nat. Fire Ins. Co. v. Dixie Co-op. Mail Order House, Tex.Com.App., 276 S.W. 219, same case on rehearing, Tex.Com.App., 277 S.W. 380; Commercial Credit Co. v. Williams, Tex. Civ.App., 87 S.W.2d 499.

We have found no fundamental error.

The case is affirmed.

On Motion for Rehearing.

PRICE, Chief Justice.

While I concur in the disposition of this case, on consideration of the motion for rehearing, I cannot agree with the grounds stated in the original opinion. In my opinion the assignments of plaintiff in error raising the question that on the verdict judgment should have been rendered in his favor should be considered. This, it seems to me, presents grounds of fundamental error.

It is further my belief that the assignments questioning the action of the court on plaintiff in error's motion for judgment non obstante veredicto should likewise be considered.

However, if it be assumed that the representation of defendant's agent, as found by the jury, constituted a true warranty, and the latent defect in the spring a breach thereof, in my opinion the judgment was still properly for the defendant. Even though this be an express warranty, it did not constitute defendant in error an insurer of the safety of plaintiff. Bruce v. Fiss, Doerr & Carroll Horse Co., 47 App.Div. 273, 62 N.Y.S. 96; Razey v. J. B. Colt Co., 106 App.Div. 103, 94 N.Y.S. 59.

The measure of damages in a breach of warranty is such as directly flows from a breach thereof and such as may be fairly said to be in the contemplation of the parties at the time of making the warranty. 37 Tex.Jur. par. 310, p. 676.

Under the finding of the jury this warranty or representation was made without negligence after the exercise of due care. Furthermore, the evidence of negligence in the management and driving of the car was for the jury. In passing upon the credibility of testimony the sole question is not the motive or interest that may actuate the witness. The jury may consider the ability and opportunity of the witness in question to receive correct impressions and to impart them truly. This accident occurred at night. It unquestionably occurred suddenly and unexpectedly. At the instant of the occurrence the parties participating therein necessarily received a great shock and jar. Their impressions as to how the accident occurred may be entirely at variance with the fact. It would seem to the writer that it might be almost impossible for the occupants to tell with exactitude just exactly what happened. The jury found the breaking of the spring was the proximate cause of the injury to plaintiff in error. It might be observed there is no finding as to what was the cause of the breaking of the spring at the point in question. Now force broke the spring. It broke where there was a previous crack. But the force applied may have been sufficient to have broken a spring in perfect condition.

My further conviction is that the want of care in the management of the car precludes a recovery by plaintiff in error. It seems to me that Jones v. George, 61 Tex. 345, 363, 48 Am.Rep. 280, governs here. It is unnecessary to recite the facts involved in that well-known landmark of the law. This quotation will suffice:

"Might he, by ordinary care, have ascertained whether it was or not, and if found not to be, have procured the genuine 'Paris green' in time to have preserved his crop in whole or part, as he subsequently did, and preserved a part of his crop last attacked by the worm?

"These were questions of which, in such a case as this, inquiry should have been made by the jury, and if in reference to such matters it was found that the appellant had not used that ordinary care which a prudent man would have used under the circumstances, then he ought not to recover

for such loss of his crop as might have been avoided by ordinary care."

See also C.J. pages 888, 889, § 866.

Plaintiff in error's injury, under the finding of the jury, would not have occurred but for his want of ordinary care.

I concur in the overruling of the motion.