FIDELITY & CASUALTY CO. OF NEW YORK v. ENER.

No. 2956.

Court of Civil Appeals of Texas. Beaumont.

July 23, 1936.

Rehearing Dismissed by Appellant Oct. 7, 1936.

268

Smith, Smith & Boyd, of Beaumont, for appellant.

Howth, Adams & Hart, of Beaumont, for appellee.

O'QUINN, Justice.

This suit arose under the Workmen's Compensation Law of Texas (Vernon's Ann.Civ.St. art. 8306 et seq.). United Gas Public Service Company was the employer; J. W. Ener, appellee, the employee; and appellant, the Fidelity & Casualty Company of New York, the insurer.

On May 2, 1934, while in the course of his employment as an employee of United Gas Public Service Company at Port Arthur in Jefferson county, Tex., appellee received an injury to his right foot by an electric welding machine weighing several thousand pounds running over and crushing it, causing various and serious injuries to his said foot. This injury was made known to and was known by the employer, United Gas Public Service Company, on the same day as the accident, and, as required by the rules of the employing company, was reported to the insurance carrier, appellant. Appellee was placed in a hospital at Port Arthur, and then, on the next day, removed in an ambulance to a hospital at Beaumont, where he remained under treatment for some four or five months. An operation was performed on his foot, but it not improving—the broken bones not uniting as desired—he was taken to Dr. Taylor, a bone specialist, at Houston, Tex., for examination of his injured foot. Appellee has not worked since receiving the injury, he testifying that when he attempts to make use of his foot and leg, he suffers intolerable pain, and that he has since his injury at all times been totally incapacitated to work. Appellant recognized its liability to appellee for his incapacity and paid him compensation for 45 weeks at the rate of $11.08 per week. The record does not disclose the exact date when such compensation payments began, nor when nor why they ceased.

On February 11, 1935, appellee filed with the Industrial Accident Board notice of his injury and claim for compensation for total and permanent disability caused by and resulting from the injury received by him on May 2, 1934. On April 8, 1935, the board made its award and ruling on said claim, awarding compensation for total incapacity from May 2, 1934, to June 26, 1935, or 60 weeks, at the rate of $11.52 per week, and compensation for partial incapacity of 75 per cent. as related to total and permanent loss of the use of his foot, for 65 weeks at the rate of $8.64 per week. To this ruling appellee excepted, and duly gave notice that he would not abide same and would appeal same by filing suit in the proper court where the injury occurred, and did duly file this suit in the district court of Jefferson county, Tex., to set aside said award, and to recover compensation for total and permanent incapacity resulting from his said injury.

Appellee, in his petition, made the usual and necessary allegations in suits of this character to entitle him to recover and prayed for compensation, limited in amount to $3,000, payable in a lump sum. Appellant answered by general demurrer, various

special exceptions, general denial, and specially (a) that the injury received by appellee on May 2, 1934, was confined to and affected only his right foot; and (b) that it had paid appellee compensation in the sum of $498.60, being for 45 weeks at the rate of $11.08 per week, which should be applied to any judgment rendered against it.

The court overruled appellant's general and special exceptions, and the cause was tried to ·a jury upon special issues, upon their answers to which judgment as for total and permanent incapacity was rendered for appellee in the sum of $3,000 as prayed for by appellee, after allowing a discount of 6 per cent. and credit for the amount theretofore paid, $498.60, said $3,000 to be paid in a lump sum. This appeal is from that judgment.

Appellant's brief presents 47 propositions based upon 95 assignments of error. We shall discuss only those deemed necessary to a disposition of the appeal.

The first three propositions, in effect, complain that the court erred in overruling its exceptions to the sufficiency of appellee's petition in that said petition was vague, indefinite, and pleaded conclusions rather than facts. Without encumbering this opinion by lengthy statements of appellee's petition, we will say that after a careful inspection of same, we think it sufficient to fully apprise appellant of every right asserted or demand made against it by appellee, and the court did not err in so ruling.

■ The assignments (presented grouped) that the court erred in giving a definition of "total disability" in charge to the jury for the reason that, (a) said charge was without support in the pleadings, and (b) the injuries pleaded by appellee were limited to his right foot, and (c) because the "overwhelming weight and preponderance of the evidence was to the effect that plaintiff's disability, if any, was confined to his right foot," are overruled. It is true that appellee alleged that he was injured by an electric welder running over his right foot, crushing and severely injuring same (fully pleading the various injuries caused by and resulting from said accident), but he also at rather great length pleaded the result of his said injuries, not only to the foot in particular, but to 'his whole body, and the intense pain he suffered in his body when he made any effort to use his right foot and leg,

and that by reason of the result of said injury to his foot and body he was totally incapacitated to labor. The allegations in the petition sufficiently pleaded the issue, and the jury found from the evidence that such disability existed, and we find the evidence amply supports the verdict.

■ Propositions 5, 6, 12, 14, 15, 16, 17, 28, 29, 30, 32, 33, 34, 35, 36, 37, 42, and 43 are submitted grouped. They relate to various and numerous matters, but in the main they alleged errors in the court's charge submitting the issues of total disability, and permanent disability; it being insisted that said issues were not raised by the evidence in that the evidence showed that the disability was limited to the right foot, or the right foot and leg, and that said injury did not result in injury to the whole body, and therefore was a specific injury. This contention is without merit. The pleadings and the evidence raised these issues, and the answers of the jury that the injury resulted in both total and permanent incapacity have sufficient support in the evidence. It is further urged in the above propositions that the court erred in submitting issues as to whether appellee sustained an injury on May 2, 1934, and whether such injury, if any, was an accident; it being contended that such issue should have inquired whether such injury, if received, was confined to appellee's right foot, or at most to his right foot and leg. This contention has no merit. In the first place, it is undisputed that appellee did, on May 2, 1934, receive an injury; that it was sustained in the course of his employment; and that such injury was accidental. These facts being undisputed, the court should not have submitted issues as to same, for undisputed facts do not have to be submitted to a jury for its finding. Furthermore, the court submitted issues to the jury as to whether the injury suffered and the incapacity resulting from the injury were confined or limited to the foot and leg, each of which issues the jury found in favor of appellee; that is, that such injuries, and the incapacity resulting therefrom, were not limited to the foot, nor to the foot and leg. These issues fully covered the contention of appellee. In the above propositions it is also urged that the judgment was erroneous in that it awarded to appellee recovery in the sum of $3,000, which sum is "far in excess of any sum" to which appellee would have been entitled to for the loss of

a foot, or the use of a foot. This contention is based upon the assumption that the injury was "confined solely" to the right foot. While the original injury was to the right foot, the effect of same spread to and affected the whole body, and the result of the injury, as found by the jury, and supported by the evidence, was to incapacitate the whole body to perform labor requiring physical exertion. Appellee, in his brief strenuously objected to our considering the above assignments because, as submitted, multifarious, and, under the rules, the objections might have been sustained; but a careful inspection and consideration of the record convinces us that no error was presented and we have fully considered each of them, and they are all overruled.

Propositions 7, 8, 9, 10, 11, 18, 19, 20, 21, 22, 23, 24, 25, 26, 31, 40, 41, and 44, are presented grouped. In various ways they assert that as the undisputed record shows that appellee sustained his injury on May 2, 1934, and did not file his claim for compensation until February 11, 1935, more than six months from the date of the injury, the claim was made too late; and that as the only matters pleaded as excuse for failure to file his claim were: (a) That his employer and appellant each had notice and actual knowledge of his injury, and, as was customary with the employees of his employer, he relied upon them to give proper notice of his injury and claim for compensation; and (b) that both his employer and appellant had actual knowledge of his injury when same occurred, and appellant recognized its liability to and actually paid appellee 45 weekly installments of compensation prior to the filing of his claim with the Industrial Accident Board which constituted good cause for his failure to file his claim up to the date same was actually filed—said pleas of good cause were insufficient, and the facts pleaded would not and did not constitute good cause for failure to file his claim for compensation within the time prescribed by law, six months, wherefore the court erred in overruling its demurrers to said pleas, and in submitting issues to the jury as to whether appellee, under the facts, had shown good cause. The assignments are overruled. Appellee was injured on May 2, 1934. His employer and appellant had actual notice of such injury. Appellant in its answer pleaded that it had paid 45 weeks' compensation to appellee by reason

of incapacity resulting from such injury, and prayed that, in case of judgment against it, the amount so paid, $498.60, be credited against the judgment. Appellee admitted that such weekly payments had been made. The payments ceased, and appellee on February 11, 1935, filed his claim with the Industrial Accident Board for compensation for total and permanent incapacity. Appellee testified that his employer customarily made reports of accidents and made claim for compensation for its employees, and that he relied upon this custom and promise of his employer to make claim for him. That such custom existed was denied. The court submitted issues to the jury embracing this question for their finding, and also as to whether, if so, it was good cause. The jury answered in appellee's favor. Likewise an issue as to whether the payment of 45 weeks of compensation to appellee by appellant was good cause for his failure to file his claim for compensation with the Industrial Accident Board until the date same was actually filed. This issue was also answered favorable to appellee. As hereinbefore stated, the record does not disclose just when the weekly payments began, nor when nor why they ceased. But it is undisputed that the 45 weekly installments of compensation payments were made by appellant to appellee for total incapacity resulting from the injury. We think it should be said that as appellant had actual knowledge of the injury and recognized its liability and paid appellee weekly compensation for total incapacity for 45 weeks, this evidenced that appellant had been informed of appellee's injury and his claim for compensation, and that the compensation payments were made in response to such claim. While appellee was receiving his compensation, he was justified in believing appellant would continue to pay him the compensation to which he was entitled, and that no necessity existed for a formal claim to be filed with the board. He was justified in indulging this belief as long as his weekly installments of compensation were being paid. The fact that only 45 weekly payments were made shows that further payments were refused, and it was then the claim for compensation for total and permanent incapacity was filed with the board. The payment of compensation for 45 weeks, thus inducing the belief on the part of appellee that compensation would continue to be paid, was good cause for not filing

his claim up to the date same was filed, for such payments extended from the date of the injury and resulting incapacity up to about the date of the filing of the claim with the board. The contention that the answers of the jury to the several issues were without support in the evidence and against the great weight of the evidence is without force. There was ample evidence to support each of said findings.

Under the pleadings, the evidence, the finding of the jury, and consequent judgment that appellee was entitled to be paid compensation in a lump sum, no error is shown.

■■■ Propositions 45, 46 and 47 relate to the answer of the jury finding that appellee's average weekly wage was $24.00, and assert that such finding was without support in the evidence, and reversible error.

There is no contention that under the evidence the average weekly wage of appellee could have been determined under first subdivision 1 of section 1 of article 8309 of R.S.1925. In answer to special issue No. 15, the jury found that there was no employee of the same class as appellee who had worked for substantially the whole of the immediately preceding year in the same or similar employment in the same or a neighboring place (first subdivision 2, article 8309), and so the court submitted the issue of appellee's average weekly wage as permitted under first subdivision 3 of section 1 of article 8309, R.S.1925. The jury answered $24. It is insisted that the finding was without support in the evidence, and that under the pleading there was no basis for the submission of an issue under first subdivision 3, section 1 of article 8309, and as the jury had found there was no employee of the same class as appellee who had worked for substantially the whole of the preceding year, there was no sufficient foundation in the record for the rendition of any judgment for compensation against appellant. The pleading of appellee was sufficient for the submission of an issue as to his average weekly wage under either of the methods provided in article 8309. Appellee had not worked in the employment in which he was engaged at the time of receiving his injury for substantially the whole of the preceding year, so his average weekly wage could not be determined by first subdivision 1 of section 1 of article 8309. In answer to a special

issue, the jury found that there was no employee in the same class as appellee who had worked for substantially the whole of the immediately preceding year in the same or a neighboring place, so the average weekly wage of appellee could not be found under first subdivision 2 of section 1 of article 8309. Under this state of the facts, the average weekly wage must be found by the method provided by first subdivision 3 of section 1 of article 8309; that is, "in any manner which may seem just and fair to both parties." In answer to a special issue thus formed, the jury found the average weekly wage to be $24. Under this finding, the weekly compensation to which appellee would have been entitled was $14.40. Appellee pleaded and testified that a fair wage for the work he was doing was $4 per day and that he worked six days in the week. Other witnesses testified that $35 per week would have been a just and fair wage for the character of work done. This evidence supported the jury's finding, but the undisputed evidence shows that appellee received only $3.20 per day for six days per week. However, this inconsistency in finding and undisputed fact would not, and does not, require a reversal of the judgment. Appellee's prayer was for judgment for compensation in a sum not to exceed $3,000. The judgment was for that sum. It is insisted that as appellant had paid 45 weeks' compensation for total incapacity at the rate of $11.08 per week, and appellee had accepted same, he should not now be permitted to claim a higher rate of compensation. Without further discussion of the contention of appellant, we will say that, in our opinion, it has no just cause of complaint, if any at all, relative to the finding of the average weekly wage of appellee, or the method by which same was found, for in that the court, at the request of appellee, rendered judgment for only $3,000, which was more than $1,900 less than appellee would have been entitled to under the finding of the jury, after deducting the 45 weekly payments of compensation, or $498.60, paid by appellant, and after deducting 6 per cent. discount for lump-sum payment; and more than $700 less than the sum to which appellee was entitled under first subdivision 2 of section 1 of article 8309, as calculated by appellant at the day wage of $3.20 when admitting its liability and making payments to appellee of $11.08 per week for 45 weeks, after deducting the

$498.60 previously paid by appellant, and after deducting 6 per cent. discount for lump-sum payment. It thus clearly appearing that appellant was not injured, but to the contrary largely benefited, under the award of compensation adjudged appellee, however computed, it has no cause of complaint, and if there was any irregularity or error in the method by which appellee's compensation was calculated, same was harmless, as appellant was largely benefited by the judgment rendered, and so not prejudiced. Furthermore, we do not believe that appellee's rate of weekly compensation was in question. Appellant admitted it to be $11.08 per week, and voluntarily paid that sum for 45 weeks. That was for total incapacity. The facts upon which to base the rate of compensation being known to appellant, and it having admitted its liability to pay compensation at the rate of $11.08 per week, it was not necessary to submit to the jury the question of appellee's average weekly wage. Fidelity & Casualty Co. v. Branton (Tex.Civ.App.) 70 S.W.(2d) 780 (writ dismissed).

All assignments presented by appellant have been considered, and none of them showing reversible error, the judgment should be affirmed, and it is so ordered.

Affirmed.