RICHARD J. GRIFFIN V. SUPERIOR INSURANCE COMPANY.

No. A-7354. Decided June 15, 1960.
Rehearing Overruled October 12, 1960.
(338 S.W. 2d Series 415)

*Huff & Splawn,* and *J. H. Splawn, Jr.,* of Lubbock, for petitioner.

On the theory of no evidence to support the jury findings cited Fished Construction Co. v. Riggs, 320 S.W. 2d 217; Travelers Ins. Co v. Noble, 129 S.W. 2d 778; Federal Underwriters Exch. v. Stewart, 109 S.W. 2d 1031.

*M. Hendricks Brown* and *Walter E. Jordan,* both of Fort Worth for respondent.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

In this workmen's compensation case, the jury found that Griffin had been totally and permanently disabled. His wage rate was found to be $90 per week (reduced to $80 by remittitur) which entitled him to the maximum compensation rate of $35 per week. The jury found that Griffin had not worked substantially the whole of a year at his employment. It further found that there was no other worker of the same class who had done similar work in the same or neighboring place. The jury therefore fixed his wages, under the Texas statute, as that rate which would be "just and fair" to both parties. Art. 8309, section 1, Subd. 3, Vernon's Annotated Texas Statutes. The insurance carrier had voluntarily paid Griffin on the basis of that same rate ($35 per week) for a period of 22 weeks prior to the trial. Judgment was accordingly entered for Griffin.

The judgment of the trial court was reversed by the Court of Civil Appeals, 323 S.W. 2d 607. It held that the trial court erred in permitting the jury to fix Griffin's wage rate under the "just and fair" section of the statute. Its reason was that before an employee is entitled to have his weekly wage ascertained under the "just and fair" section of the statute, he (Griffin) had the burden of showing that no other employee had done similar work in the area for substantially the whole of a year prior to his (Griffin's) injury. The Court of Civil Appeals found that there was *no evidence* that there was no such other employee in the area. Petitioner is here asserting that the holding of the Court of Civil Appeals was error. We affirm the judgment of the Court of Civil Appeals.

Art. 8309, section 1, defines "average weekly wages." Subdivision 1 thereof applies to the employee who has worked for substantially the whole of the year immediately preceding the injury in the employment in which he was working at the time of the injury; Subdivision 2 applies to the injured employee who has not worked in such employment substantially the whole of the year preceding his injury, and his average weekly wage shall be that of an employee of the same class who has worked substantially the whole of the year, in the same or neighboring place, in the same or in a similar employment, and Subdivision 3 applies only where subdivision 1 and 2 do not apply, in which event his average weekly wages shall be computed in any manner that may seem just and fair to both parties. It was under Subdivision 3 that Griffin's "average weekly wage" was computed.

■ In the application of these provisions for the determination of the average weekly wage of an injured employee, it is held that "* * * under the statute the burden is on the claimant to show by competent evidence that it is impracticable to compute the average weekly wage under either subsections 1 or 2 before subsection 3 can be resorted to * * * ." American Employers' Ins. Co. v. Singleton, Comm. App., 1930, 24 S. W.2d 26, (holdings of the Commission expressly approved by the Supreme Court.)

A case in point is the case of Robinson v. Texas Employers' Ins. Ass'n., Texas Civ. App., 1953, 261 S.W. 2d 217, wr. ref. There the Court said:

"The trial court correctly held that the evidence did not support the jury finding that no other employee of the same class as plaintiff had worked substantially the whole of the year immediately preceding plaintiff's injury in the same or similar employment in the same or neighboring place as provided in Subdivision 2 of the statute. There was no evidence that there was not such an employee. On the contrary, plaintiff himself testified and named three persons who had worked as much as a year prior to his injury in the same type of work in which he was engaged. This testimony is not contradicted. Although there was no evidence concerning the average weekly wage earned by such employees, there was no showing that such wages could not have been ascertained, or why for any reason it would have been impracticable to compute plaintiff's wage rate on the basis of the wages earned by one or more of such employees. It is well settled that a compensation claimant must show that his average weekly wage cannot be computed under either Subdivision 1 or 2 of the statute before he can resort to Subdivision 3 which provides for computation of his wage rate on a basis just and fair to both claimant and employer. Plaintiff did not make such proof concerning Subdivision 2." (Citing cases).

It is undisputed that plaintiff had not worked for the whole of the year preceding his injury; therefore Subdivision 1 could not apply. The plaintiff testified that there was another employee engaged in the same work who had worked the year preceding plaintiff's injury. There is no evidence in the case at bar that would indicate that plaintiff made a mistake when he testified unequivocally and positively that he had located a man at O'Donnell, Texas, who had done the same work as plaintiff for a full year. There was no other evidence in this record except plaintiff's testimony on this point.

Plaintiff, in direct testimony, testified as follows:

"Q. Is there men out there at the gin that you know of that worked on through the gin for the whole year?

"A. Not that gin.

"Q. Well, at any of those gins in that area?

"A. Well, I know of one fellow at O'Donnell that worked the year around at the gin.

"Q. All right, does he do maintenance work, too?

"A. Just like I was doing.

"Q. Well, then I will ask you then, does he work on through with that type of work, through the Fall and ginning season?

"A. Yes, sir."

Plaintiff, on re-direct examination by his counsel, testified as follows:

"Q. Speak out now where he can hear you, because you have your back to him, Mr. Griffin. Now, then, I will ask you, Mr. Griffin, if you made a search yourself?

"A. I did.

"Q. What type of search—just tell the jury what type of search that you made, and how you went about it in trying to find a wage-rate man that did work a full 12 months in the cotton ginning business?

"A. Well, I went to practically all of them, O'Donnell—

\*   \*   \*

I went to every—all of the gins in the area and tried to find someone that worked the whole 12 months. Well, I went to cafes—

"Q. Did you go any other places besides the gin itself?

"A. Yes, sir: I went to cafes, and a lots of places where

they trade, at grocery stores, and so-forth, *and I found one man that worked.* (Emphasis supplied).

"Q. All, right, Sir, in that particular area doing the same type of work that you were doing?

"A. Yes, sir."

This is the testimony to a direct fact that there was a man at O'Donnell who had bee nengaged in the same work that plaintiff was engaged in at a gin for a full 12 months prior to the time of his injury.

■ In order that plaintiff may recover under Subdivision 3, Section 1, Art. 8309, it is necessary for the plaintiff to plead and prove facts that will prevent either Subdivision 1 or Subdivision 2 of this Article from applying. This the plaintiff not only failed to do, but he proved the fact that there was a workman who was employed a full 12 months at the same type work he did. This would entitle plaintiff to recover under Subdivision 2 if the pleading and evidence showed the wage rate of such workman. There is no evidence as to the average weekly wage of such a workman. This testimony of Griffin's that he had found another workman engaged in the same work as he who had worked for an entire year is a judicial admission which bars recovery of compensation under the "just and fair" provision in Subdivision 3, section 1, Art. 8309. This principle of law is discussed in McCormick & Ray, *Texas Law of Evidence,* Vol. 2, section 1127, p. 25, and we find these words: "As long as the * * * admission stands unretracted, the fact * * * admitted, for the purpose of the case, is accepted as true by the court and jury and binding on the party making it, i.e., he cannot introduce evidence to contradict it." A number of Texas cases are cited to sustain this proposition.

■ In 169 A.L.R. 799, II, it is stated that "if a party, in his testimony, makes a material statement of fact negativing his right of action or defense, and no more favorable testimony appears to contradict or modify it, he is bound by it regardless of its credibility. * * * " Further, on pp. 800-801, III, the rule is stated to be that "if a party testifies deliberately to a concrete fact, not as a matter of opinion, estimate, appearance, inference, or uncertain memory, but as a considered circumstance of the case, his adversary is entitled to hold him to it as an informal judicial admission." On p. 824, in discussing the Texas rule on this point, it is stated that "the Texas Court of Civil

Appeals appears to have adopted the Missouri rule, 'A party plaintiff testifying in his own behalf as to the existence of a fact is absolutely concluded thereby, unless he makes a correction thereof giving some excuse of mistake, oversight, misunderstanding, or lack of definite recollection.' " citing McMath Co. v. Staten, Texas Civ. App., 1931, 42 S.W. 2d 649, wr. dism.; J. R. Watkins Co. v. King, Texas Civ. App., 1935, 83 S.W. 2d 405, no writ history; Moore v. Conway, Texas Civ. App., 1937, 108 S.W. 2d 954, no writ history; Wristen v. Wristen, Texas Civ. App., 1938, 119 S.W. 2d 1104, wr. dism.; Kimmell v. Tipton, Texas Civ. App., 1940, 142 S.W. 2d 421, no writ history.

Citing from Stanolind Oil & Gas Co. v. State, 1940, 136 Texas 5, 145 S.W. 2d 569 (1) :

"The authorities hold that where a litigant admits positive and definite facts, which if true would defeat his right to recover, and such statements or admissions are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, he is conclusively bound by such admission, and cannot successfully complain if the court directs a verdict against him," citing numerous authorities from Texas and other cases.

The petitioner relies upon the case of United States Fidelity & Guaranty Co. v. Carr, 1951, Texas Civ. App., 242 S.W. 2d 224, wr. ref. That case states the general rule, but it is not in point under the facts in this case. Mrs. Carr brought suit against U.S.F. & G. Co. to set aside a deed whereby she had conveyed certain town lots in the city of Floresville, Texas. In her testimony she had stated, in reference to the deed exhibited to her, "that is not the paper I signed" and "I don't know how it [her signature] got there. I never signed that paper." At another time she had testified that the signature attached to the deed was hers. The Court says that it was undisputed that she had signed the deed, therefore, it would treat her testimony that she had not signed the deed as a mere mistake.

The Carr case lays down five rules that must apply before a party's testimony is conclusive against him. Briefly, they are (1) that the declaration relied upon was made during the course of a judicial proceeding. Griffin gave his testimony in the course of a judicial proceeding, to-wit, the trial of his case in court.

(2) That the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the per-

son giving the testimony. As the cause was submitted to the jury and judgment rendered for plaintiff, it was essential that plaintiff plead and prove that there were no other workmen in that territory engaged in the same work as plaintiff for 12 months. Plaintiff proved there was another person who had so worked; therefore, he cannot recover under Subdivision 3 of Art. 8309, section 1.

(3) That the statement was deliberate, clear and unequivocal. Plaintiff twice testified to the same material fact as required by this rule.

(4) That giving of conclusive effect to the declaration will be consistent with public policy. The Legislature has provided that a plaintiff must negative Subdivisions 1 and 2 in order to recover under Subdivision 3. This is the public policy of this State as declared by the Legislature and by the Courts. Plaintiff has not discharged his burden; therefore, to deny him relief is consistent with public policy.

(5) That the testimony must be such as relates to a fact upon which a judgment for the opposing party may be based. The plaintiff's right to recover depends upon his making proper proof that no other workman engaged in the same work had been employed for a full 12 months. In the absence of such proof, and under the facts of the case as submitted to the jury, the defendant would have been entitled to a judgment on the case as made upon this trial by plaintiff; therefore, plaintiff's testimony fits the rule.

Our holding above makes a discussion of petitioner's other assignments unnecessary.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered June 15, 1960.

MR. JUSTICE GREENHILL, joined by JUSTICES SMITH, CULVER and NORVELL, dissenting.

The holding of the majority of this court is that there was *no evidence* to support the jury's finding that there was no other employee.in the area who had done work similar to Griffin's for substantially the whole of a year and that Griffin had failed to prove that it was impracticable to compute his wages under Sections 1 or 2 of the statute. That holding in turn is based

on a statement from the witness stand by Griffin that he had made a diligent search for such a person and had been able to find one in a neighboring town; but such person could not be brought to the trial because he, the other person, was ill and under a doctor's care. The Court treats this statement as a judicial admission on Griffin's part which was absolutely binding upon him. The Court of Civil Appeals held further, in effect, that the voluntary payment for 22 weeks by the insurance carrier at the same rate resulting from the jury's verdict was not binding on it and constituted no evidence to support the jury's verdict under the "just and fair" section of the statute. The opinion of the majority does not reach this last point.

The term "admission" has been used without discrimination to cover two distinct situations. In one sense, it is treated as a "judiciary admission" and refers to a formal act, done in the course of a judicial proceeding, which dispenses with the production of evidence and takes the matter out of the domain of proof so that neither the court nor jury is required to make any finding in regard to it.[1] The other sense in which "admission" is generally used is to authorize the receipt in evidence of statements or conduct of a party which is inconsistent with his present position. Instead of dispensing with evidence, these admissions form a part of the evidence and are admitted as an exception to the hearsay rule. McCormick & Ray, *Texas Law of Evidence* (2nd ed.) 24, section 1127; 9 *Wigmore on Evidence* (3rd ed.) 586, section 2588 et seq. These and other authorities refer to the latter type of admission as "extra-judicial" or "quasi-admission." The "judicial admission" is binding. The other, being but a part of the evidence, is not necessarily conclusive on the party against whom it is offered.

Testimony given by a party from the witness stand may be of such a nature and character as to constitute a judicial admission. That type of testimony may literally swear a party out of court. Because of the finality which results from this concept, it is the rule in this state that "the rule or doctrine should be applied with caution." *United Fidelity and Guaranty Company v. Carr* (Texas Civ. App., 1951, writ refused), 242 S.W. 2d 224; 9 *Wigmore on Evidence* (3rd ed.) 597, section 2594a. The *Carr* case says, "In Texas, the term 'judicial admission' has been defined as a 'waiver of proof' during the course of a judicial proceeding." The inference is clear in the *Carr* case, based on state-

---

1.—McCormick and Ray say that this includes facts admitted by pleadings, agreed statements of fact, or other stipulations. 2 McCormick & Ray, Texas Law of Evidence (2nd ed.) 24, section 1127.

ments in Wigmore, that if the party is simply giving testimony as a witness to events not peculiarly within his own knowledge, the statement will not be regarded as a judicial admission. The *Carr* case quotes with approval from *Alamo v. Del Rosario*, 98 F. 2d 328 (which quotes from Wigmore) : "It is of the nature of an admission, plainly that it be by intention an act of waiver * * * ; in particular, a statement made for the purpose of *giving testimony* is not a judicial admission * * * . Mere testimony, though it comes from a party, is not by intention an act of waiver. A witness is not selling something or giving something away, but simply reporting something. The testimony of parties to a suit must be regarded as evidence, not as facts admitted." (Quotation marks within the quotation omitted.)

Wigmore further says :

"* * * If a party's testimony consists only of a narrative of events in which he participated or which he observed, there is an obvious possibility that he may be mistaken like any other witness. In such a situation, if other witnesses give a different version of the occurrence, his testimony must be weighed with theirs, and he will not be concluded by his own statements." 9 Wigmore on Evidence (3rd ed.) 599, section 2594a.

I do not think, under all the facts and circumstances of this case, that the statement by Griffin from the stand that he had made a diligent search for men who were similarly employed for substantially the whole of a year and had found one over in O'Donnell, Texas, constitutes a judicial admission which took from the jury the right to determine the fact of whether there was in fact one such person.

First, Griffin had not been in the area for substantially the whole of a year. He could not have known of his own knowledge that the man had worked at O'Donnell substantially the whole of a year.

Second, Griffin was employed at a cotton gin. There is ample evidence that the operation of a gin is highly seasonal; that the ginning season only lasts three or four months. In between the ginning seasons, there is little for an employee to do with regard to the gin except to take care of it and make repairs. The substance of Griffin's testimony is that, in general, people do not work at a gin all year. The substance of the testimony of Mr. Dempsey who was in charge of the operation of the gin was to the same effect: the work at the gin was highly seasonal.

Griffin further testified that it would be very unusual to find an employee who worked at a gin the whole of a year; that locating a person who worked all year at a gin would be a hard thing to do, and that he'd made a diligent search to try to find such a person.

The statement of Griffin with regard to his search (his "judicial admission") was simply a recital of the fact that he had found one such person at O'Donnell, Texas; but he couldn't come to the trial because he was ill. He was simply reporting or testifying as a witness to what he found. Griffin did not testify, if indeed he knew, whether this person worked 200 or 350 days per year; what his particular job was; whether it was of maintenance and repair only or otherwise; or what his wage scale was. Under the circumstances, it was not conclusive that some employee of the same class did perform similar work to that of Griffin for substantially the whole of a year in the same vicinity and that there was some evidence to support the jury's finding that there was no such employee. The sufficiency of that evidence is for the Court of Civil Appeals to pass upon.

I think there is other evidence that the correct rate of compensation was awarded Griffin. The insurance carrier, in its pleadings, stated (admitted) that it paid Griffin $35 per week for 22 weeks prior to trial. That is the same figure which resulted from the finding of the jury in this case. It did not plead that the payments were made by fraud, mistake, misrepresentation, or in an attempt to compromise the controversy. It is true that this Court held that the amount paid by the insurer was not conclusive on the insurer; i.e., that it was not a judicial admission in the strictest sense. *Southern Underwriters v. Schoolcraft* (1942), 138 Texas 323, 158 S.W. 2d 991.[2] There was evidence in that case to support the jury's finding of a lower wage rate upon which judgment was based. But the *Schoolcraft* case did not say that the voluntary payment of wages at a particular rate was not some evidence that it was a correct rate. It was held in *Traders & General Insurance Company v. Harper* (Texas Civ. App. 1940, writ refused), 140 S.W. 2d 593, that:

"In the absence of any evidence that the payments [of compensation by the insurance carrier to the injured employee] were made upon mistake or misrepresentation as to appellee's [the workman's] wage rate, or that he was entitled to a smaller compensation wage rate, we think that appellant's admission in

---

2.—Followed in Davis v. Texas Employers' Ins. Ass'n, 257 S.W. 2d 755 (1953, no writ), and in Brooks v. Lucky, 308 S.W. 2d 273 (1958, writ refused, n.r.e.)

paying appellee [the workman] compensation for 18 weeks at the rate of $13.85 per week is sufficient to support the judgment awarding that rate."

Similarly, in *Southern Surety Co. v. Eppler,* (1930, writ refused) 26 S.W. 2d 697, where the wage rate was fixed under section 3, the "just and fair" section of the statute, and the carrier had made four payments of $20 per week, the Court held through Judge McClendon that, "It does not seem unreasonable to construe this fact as in the nature of an admission for the purpose at least of a prima facie showing of wage."

The opinion in the *Harper* case cited opinions by the Courts of Civil Appeals which hold that where the wage rate is fixed, or attempted to be fixed, under section 3 of the statute (the "just and fair" section), the payment by the carrier of compensation for a period of weeks of a particular amount "in the absence of a showing that it [the carrier] did so as a result of misrepresentation or mistake" will support a judgment for that amount. See for example *Traders & General Ins. Co. v. Slusser* (1937, writ dismissed, correct judgment), 110 S.W. 2d 598; and *Fidelity and Casualty Co. of New York v. Ener* (1936, no writ), 197 S.W. 2d 267, which held that the voluntary payment was, in effect, a judicial admission which would support the compensation rate under any of the three methods of computing it. To the same effect is *Southern Underwriters v. Erwin* (1939, no writ), 134 S.W. 2d 720.

After the *Harper* decision, there were likewise a number of opinions by the Courts of Civil Appeals which hold that such voluntary payment, in the absence of misrepresentation, fraud, or mistake, would support the jury's findings. *Maryland Casualty Co. v. Romero* (1941, writ dismissed, correct judgment), 146 S.W. 2d 1096; *Texas Employers Ins. Ass'n v. Hodnett* (1949, writ refused, n.r.e.), 216 S.W. 2d 301; *Employer's Casualty Co. v. Smith* (1949, writ refused, n.r.e.), 221 S.W. 2d 322; *Texas Employers v. Grimes* (1954, writ ref., n.r.e.) 268 S.W. 2d 786; *Texas Employers Ins. Assn. v. Ewing,* (1956, writ ref., n.r.e.), 285 S.W. 2d 880; *Traders and General Ins. Co. v. Smith* (1958, writ ref., n.r.e.) 311 S.W. 2d 91, at 93, and similar cases.

Under these authorities, it would appear to be the rule when a carrier voluntarily pays an employee at a particular rate over a period of time, and the     is no pleading[3] or proof of fraud,

3.—The lack of pleading here pas  · out of the case because the evidence as to Griffin's wage rate went in witho⸴' ⸴bjection.

accident, mistake, misrepresentation or attempt to compromise the matter, such payment constitutes some evidence that the amount paid is a correct one.

I, therefore, conclude that there was some evidenec to support the jury's finding of a wage rate under section 3, the "just and fair" portion and that the judgment of the trial court should be affirmed.

Opinion delivered June 15, 1960.

MR. JUSTICE SMITH, dissenting.

The court cites the case of Robinson v. Texas Employers' Ins. Ass'n, Texas Civ. App. (1953), 261 S.W. 2d 217, wr. ref., as its principal authority supporting its holding that the Court of Civil Appeals correctly held that there was no evidence supporting the finding of the jury answer to Special Issue Number 13.[1]

The finding of "no evidence" as to this issue has led to the further conclusion that since Griffin unequivocally testified that he knew of one man who had worked, such testimony constitutes a judicial admission precluding a recovery under Article 8309, section 1, Subdivision 3, Vernon's Annotated Statutes of Texas. The Court of Civil Appeals reversed and remanded the case to the trial court for a new trial, and this court has affirmed such action. This phase of the case will be hereinafter discussed.

My reasons for holding with petitioner, Griffin, will now be stated:

The action of the trial court in permitting a recovery under Subdivision 3 of Article 8309, supra, is in harmony with the provisions of said Article. The evidence when considered in the light of the statutes supports an implied finding of the trial court that it was impracticable to compute the average weekly wages under Subdivisions 1 and 2 of the Article. Subdivision 3 reads as follows:

---

1.—"Do you find from a preponderance of the evidence that there was one or more employees of the same class as plaintiff working substantially the whole of the year immediately preceding the date of plaintiff's injury, if any, for the same or another employer, in the same or a similar employment in the same or a neighboring place?

"ANSWER: Another employee had not worked."

"When by reason of the shortness of the time of the employment of the employee, or other employees engaged in the same class of work in the manner and for the length of time specified in the above Subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the Board in any manner which may seem just and fair to both parties."

The judgment of the trial court recites that it was based upon the "findings of the jury and the stipulations of the parties entered of record in this cause and *the implied findings of the Court. * * *"* (Emphasis added.)

It is important to ascertain if the evidence supports an implied finding that good and sufficient reasons were shown that would render it impracticable to compute the average weekly wages under Subdivision 2, Article 8309, supra. Webster's New International Dictionary defines the word "impracticable" as meaning: "Incapable of being used or availed of; as impracticable road; an impracticable method."

It is true that Griffin testified that he had found one man who had worked 12 months and that he requested the man to appear and testify in the trial of this case. It is also undisputed that the testimony of this man was unavailable because of illness. Griffin testified without objection that the man was ill and under the care of a doctor. He further testified that he had made a search for others in Lamesa, Tahoka, O'Donnell, Woodrow, and other places in the area and that no other worker could be found who had worked the whole of the year next preceding the date of injury. After this proof was made, Griffin testified:

"Q. All right, now then * * * in other words, for the purpose of clarifying the record, you did not work a full 12 months yourself?

"A. No sir.

"Q. And, you cannot find another man, after making a diligent search, that did work in the same or similar type of work that you were doing at the time you were injured, is that correct?

"A. That's right."

The attorneys for petitioner in the present case were also attorneys for petitioner, Robinson, in the case of Robinson v. Texas Employers' Ins. Ass'n., supra. In the trial of the present case, they had before them the Robinson case wherein Robinson's application had been refused by this court. This court, in refusing the application for writ of error adopted the following portion of the Court of Civil Appeals' opinion as its own:

"Although there was no evidence concerning the average weekly wage earned by such employees, *there was no showing that such wages could not have been ascertained or why for any reason it would have been impracticable to compute plaintiff's wage rate on the basis of the wages earned by one or more of such employees.*" (Emphasis added.)

That Griffin discharged his burden of establishing a reason for the absence of proof as to Subdivision 2 is undisputed. No issue was requested and no objection to the charge was made to the failure to submit such issue. In the Robinson case, supra, the trial court found that Robinson had failed to establish that it was impracticable to compute his average weekly wage under Subdivision 2 of the statute and was, therefore, not entitled to have his wage rate computed under Subdivision 3, and that the jury's finding under Subdivision 3 should be disregarded. The specific finding of the trial court was "that the plaintiff failed to establish by legal and competent evidence that it was impracticable to compute his average weekly wage under Subsection 2 of Article 8309." The Court of Civil Appeals stated that "this finding is the basis of the court's judgment non obstante veredicto and in our opinion is not subject to the complaint urged by appellant."

It is well settled that the Workmen's Compensation Act should be liberally construed in favor of the injured employee. Clearly, the Legislature meant to excuse a plaintiff from making proof under Subdivision 2 if a valid reason should be given as to why the testimony could not be produced thereby rendering it impracticable to compute the average weekly wage rate under Subdivision 2. This reasoning gives effect to all provisions of Subdivision 3, Article 8309, supra. The judgment of the trial court should be affirmed unless it is necessary to return the case to the Court of Civil Appeals to decide the point that the answer to Issue No. 13 was against the great weight and preponderance of the evidence. I take the position that such action is not necessary. Under my view, it can be admitted that one man worked substantially the whole of the year, but still petitioner

was entitled to have his wage rate computed under the provisions of Subdivision 3, Article 8309.

Opinion delivered June 15, 1960.

Rehearing overruled October 12, 1960.