Edward L. WHITTENBURG, Appellant,

v.

Lee WHITTINGTON et al., Appellees.

No. 1124.

Court of Civil Appeals of Texas, Houston (14th Dist.).

May 14, 1975.

Rehearing Denied June 4, 1975.

Lynn D. Seets, Joel W. Cook, Schlanger, Cook, Cohn & Mills, Houston, for appellant.

Herbert N. Lackshin, Tita, Lackshin & Nathan, Houston, for appellees.

CURTISS BROWN, Justice.

Lee Whittington and Braxton Thompson (appellees) instituted suit against Edward L. Whittenburg (Whittenburg or appellant) seeking certain proceeds from the sale of stock equitably owned by appellees and held in the name of appellant. Recovery was also sought for money expended by the appellees in the partial discharge of a promissory note which they had executed as an accommodation and for the benefit of appellant. Whittenburg claimed that while he had held the stock of Commercial National Bank of Dallas to the extent claimed for the benefit of appellees, that part of the consideration that he had received for it was in the form of a promissory note. He asserted, therefore, that he was not responsible at the present time for such portion of the profits as were represented by the note. In addition he claimed certain offsets. One offset claim was the balance of an indemnity fee for a performance bond required for the construction for the Burnett Bayland Juvenile Home and

School. He also claimed a 2% indemnity fee for a bond required in connection with a housing project in Diboll, Texas. He sought offset for appellees' pro rata share of expenses incurred in connection with the acquisition of the bank stock in question. He also cross-acted concerning a pre-judgment writ of garnishment procured by appellees which appellant said was wrongful and damaged him greatly.

Trial was to the court. It entered judgment for appellees against appellant for $18,874.27, which figure represented the amount claimed by appellees less certain offsets established by appellant. He denied appellant any recovery on his cross-action for wrongful garnishment. Findings of fact and conclusions of law were filed in support of the trial court's judgment.

■ Appellant's first three points complain of the trial court's action in allowing a 1% offset as a fee for the Diboll bid bond. He complains of the trial court's refusal to admit into evidence a memorandum prepared by a former associate of Whittenburg. The handwritten notes contained the language: "Ed—2% Ind. fee—Told Lee, told Ed and Lee to get together." Appellant urges that this language supports his version that a 2% rather than a 1% fee was payable out of the Diboll job. Appellee argues, with some reason, that appellant has not properly perfected his point because he did not offer the instrument itself as part of his bill of exceptions. We prefer, however, to overrule point 1 on the basis that the error, if any, of the trial court in refusing to admit the writing was harmless. Texas Rules of Civil Procedure, rule 434. In the course of the witness' testimony, he read and interpreted his language and abbreviations on the document with regard to the fee. The court had before it appellant's construction as to the meaning of the language and the language itself. Exclusion of the actual physical document was not such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case.

■ Appellant's points two and three raise legal and factual sufficiency points against the trial court's factual conclusion that 1% rather than 2% was the appropriate bond fee for the Diboll job. The evidence established that on a previous fee (Burnett Bayland School) the percentage was 1%. Although appellant testified that he understood the fee was to be 2% on the Diboll job, the trier of fact was presented with a typical fact issue. The trial court having resolved the issue against appellant we shall not disturb the finding. We have reviewed the evidence under appropriate standards and overrule these points.

■ Points four and five present appellant's contention that he had not received payment of the purchase price of the stock. In this connection he emphasizes that part of the consideration that he had received was in the form of unpaid notes which were the subject of pending litigation. Appellant is correct in his statement that approximately $100,000 of the total $618,000 consideration for the sale of all of the shares was in the form of promissory notes subject to certain possible offsets and as yet uncollected. However, Whittenburg testified that the stock was sold in July of 1968. He thereafter wrote appellees that each were entitled to $11,304.44. Indeed, he attached a demand note dated July 19, 1968, bearing 5% interest, in the principal amount of $11,304.44. It is not necessary for us to determine whether his evidence amounted to a judicial estoppel. Griffin v. Superior Insurance Company, 161 Tex. 195, 338 S.W.2d 415 (1960). Regardless of appellees' denials that they had received the letters and notes sent them by Whittenburg, such evidence from appellant would, at the very least, be an admission against interest and direct evidence supporting the trial court's finding as to the amounts due.

Appellant's points six and seven continue his attack on the notes that he claimed to have sent to appellees. This attack is based upon appellees' testimony that the notes had not been received by them. These letters and notes were admissions by Whittenburg which were probative of the amounts to which appellees were entitled to recover and the interest rates agreed to by the parties. Points six and seven are overruled.

■ Appellant's points eight and nine state a claim that the trial court erred in not reducing the principal amount owed to appellees by the amounts of the offsets before the allowance of interest on the bank stock profit. As we have stated, Whittenburg's evidence established a liquidated and acknowledged amount due from July 19, 1968. There is no evidence of any tender by appellant of the amounts admittedly due under the sale of the Commercial Bank's stock less any specific offsets. The record is susceptible to the construction that the claimed offsets may not have accrued until after this suit was instituted. Appellant failed to request additional findings of fact relating to interest claimed on his offsets or as to the time such offsets may have accrued.

■ Finally, appellant's points ten and eleven claim the trial court erred in concluding that the garnishment issued was not wrongful and that the court should have allowed Whittenburg damages for the writ of garnishment issued under an unconstitutional statute. In this latter connection he cites this Court's decision in Southwestern Warehouse Corp. v. Wee Tote, Inc., 504 S.W.2d 592 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ), in which we held that a pre-judgment writ of garnishment issued without notice to the debtor was, under the circumstances of that case, in violation of the 14th Amendment of the Constitution of the United States. The record here presents a sharply conflicting fact issue relating to the garnishment issue. Appellant claimed to have substantial assets known to the appellees which were ample to discharge the indebtedness claimed by appellees many times over. On the other hand, appellees disclaimed any knowledge of property sufficient to satisfy the debt upon which they had sued. On conflicting evidence the trial court was justified in finding that at the time of the issuance of the writ of garnishment appellees did not have personal knowledge of any property owned by appellant subject to execution sufficient to satisfy any judgment which they might have obtained against him. King v. Tom, 352 S.W.2d 910 (Tex.Civ.App.—El Paso 1961, no writ). We should observe that Vernon's Tex.Rev.Civ.Stat.Ann. art. 4076 (1966) was frequently used as a pre-judgment remedy before our decision in *Wee Tote* in cases involving liquidated damages. No court before *Wee Tote* had declared this statute unconstitutional. The garnishment in this suit was issued long before our decision in *Wee Tote* and upon reliance on an apparently valid statute. We, therefore, hold that it should not be retroactively applied so as to make a garnishment wrongful that had been obtained in good faith. *See* Lemon v. Kurtzman, 411 U.S. 192, 199, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1972).

In view of the fact that we have considered all of appellant's points and have overruled them, we affirm.

Affirmed.