E–TEX DAIRY QUEEN, INC., Appellant,

v.

Robert Wade ADAIR, Appellee.

No. 8109.

Court of Civil Appeals of Texas, Beaumont.

April 6, 1978.

Rehearing Denied April 27, 1978.

Joe E. Griffith, Crockett, for appellant.

John V. Elick, Bellville, for appellee.

KEITH, Justice.

Defendant below appeals from an adverse judgment rendered in a jury trial on a suit for wrongful discharge from employment.

Plaintiff was an employee of defendant from November 1973 until July 1975. While working in one of defendant's stores in June 1975, he sustained a hernia requiring hospitalization and was discharged by defendant on July 21, 1975, subsequent to which he filed a claim for worker's compensation benefits.

In November 1975, plaintiff was employed again by defendant's district manager but was fired, again and finally, on his first day on the job.

Plaintiff filed this suit under Tex.Rev. Civ.Stat.Ann. art. 8307c (Supp.1978), claiming that he had been wrongfully discharged from his employment on July 21, 1975, and November 25, 1975, because he had filed a worker's compensation claim.

The jury found that he had been wrongfully discharged on November 25, 1975, because of his claim for compensation benefits, but not on July 21, 1975. The jury further found that as a result of this wrongful discharge plaintiff should be awarded $5,548.00 for loss of past earnings. The trial court entered a judgment accordingly, and the appeal is taken from this judgment.

In its points of error one and two, defendant contends that the trial court erred in submitting to the jury Special Issue No. 2 [1]

1. SPECIAL ISSUE NO. 2: "Do you find from a preponderance of the evidence that the defendant discriminated against Bob Adair, or discharged Bob Adair from his job on or about

and in entering judgment upon the jury's answer to that special issue because plaintiff admitted that the employer who discharged him on November 25, 1975, was not our defendant, but E-Tex Dairy Queen Company, a different company which is not a party to the case at bar. We disagree.

Tex.R.Civ. P. 93(e) (Supp.1978) requires that any pleading claiming a defect of parties must be verified by affidavit, "unless the truth of such matters appear of record."

■ Defendant failed to file a verified pleading denying that it was the entity which fired plaintiff on November 25, 1975. Therefore, it waived its right to do so "unless the truth of such matters appear of record." See and compare *Campbell v. Jefferson*, 453 S.W.2d 336, 340 (Tex.Civ.App.—Tyler 1970, writ dism'd), and authorities therein cited.

Defendant contends that plaintiff by his own admissions in his depositions and in court has proved that he sued the wrong entity with regards to his second firing.

■ A judicial admission is a formal waiver of proof that relieves an opposing party from making proof of an admitted fact and bars the party who made the admission from disputing it. *Gevinson v. Manhattan Construction Co. of Okla.*, 449 S.W.2d 458, 466 (Tex.1969); *Esteve Cotton Co. v. Hancock*, 539 S.W.2d 145, 157 (Tex. Civ.App.—Amarillo 1976, writ ref'd n.r.e.). The testimonial declarations of a party may constitute a judicial admission, but they must be clear, deliberate, and unequivocal. *Gevinson*, supra, 449 S.W.2d at 466; *Griffin v. Superior Insurance Co.*, 161 Tex. 195, 338

S.W.2d 415, 419 (1960); *United States Fidelity & Guaranty Co. v. Carr*, 242 S.W.2d 224, 229 (Tex.Civ.App.—San Antonio 1951, writ ref'd). This doctrine is applied with caution because its application could result in the destruction of a party's right of recovery or defense. *Esteve Cotton*, supra, 539 S.W.2d at 157.

■ A review of plaintiff's testimony shows only that plaintiff knew that there had been a change in the ownership and management of "E-Tex Dairy Queen"—instead of two partners managing twenty-four stores, each person owned and managed twelve stores, with Henry Ellis retaining the ownership of "E-Tex Dairy Queen." [2] His statements are not so clear, deliberate, and unequivocal as to constitute a conclusive judicial admission that plaintiff knew E-Tex Dairy Queen Company fired him on November 25, 1975, rather than E-Tex Dairy Queen, Inc.

E-Tex Dairy Queen, Inc., is still a viable corporation with Henry Ellis as its president; Ellis is also the managing partner of E-Tex Dairy Queen Company. This is the same Henry Ellis who, upon receiving the citation in this suit (accompanied by plaintiff's original petition giving him full notice of plaintiff's contentions), took no action to inform the court that it was his partnership—and not his corporation which should have been sued. Moreover, instead of advising plaintiff of the ownership question by pleading or by answers to interrogatories, defendant waited until trial to raise the question.

---

November 25, 1975 as a result of Bob Adair claiming workmen's compensation benefits?"

"Answer: We do."

2. When plaintiff was asked why he had testified about working for two different employers, he explained:

"A Okay. Number one was that they said on that different employer that at the time the other company was in progress, you know, that E-Tex was, you know, both partners in there, Henry never had anything to do with the company, but after they, Henry and them, split up, Henry took half of the compa-

nies, that meant he was in charge of his twelve, and Ray was in charge of his twelve, meaning that Ray was not still the same man in charge of the whole company like it used to be, but I assumed it was the same people in there but only different was Ray was not there, and that's how I meant that the, you know, the two companies was different ever since—

\*    \*    \*    \*    \*    \*

"A I was just going to say that, you know, as far as the company being the same, nothing's changed, the address is the same."

From our review of the evidence we are not convinced that plaintiff's knowledge of the management change, in and of itself and without a more complete and detailed understanding of the nature of the change, relieved defendant of its duty of affirmatively pleading a defect in the parties sued. Points one and two are overruled.

In its third point of error, defendant attacks the legal and factual sufficiency of the evidence supporting the submission of and the jury's answer to Special Issue No. 2.

In considering a "no evidence" point, we must view the evidence in its most favorable light in support of the finding and we must review only the evidence and inferences which support the finding. *Lucas v. Hartford Accident and Indemnity Co.,* 552 S.W.2d 796, 797 (Tex.1977); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). In considering an "insufficient evidence" point, we must consider all the evidence. *Garza,* supra, at 823; *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

We now recount a portion of the evidence pertaining to Special Issue No. 2 noting that general manager Ingram and district supervisor Milam were eager to hire plaintiff in order to improve their employer's business because he maintained low food and labor costs. Defendant's president Ellis and secretary-treasurer Lankford wanted him discharged immediately. Both Ingram and Milam gave as *one* of the reasons for discharging plaintiff his filing of the claim for compensation benefits. In fairness to defendant, we concede that they also testified that plaintiff was discharged because of his past record of misconduct, especially his social contacts with female employees.

Having reviewed the evidence under the appropriate standards, we are of the opinion that the evidence was factually sufficient to authorize the submission of Special Issue No. 2 and to support a finding in favor of plaintiff.

The jury as a trier of fact was in the best position to evaluate the testimony. It is clear that it concluded that defendant wrongfully discharged plaintiff because of his compensation claim. The jury had the right to believe plaintiff and the right to disbelieve defendant's witnesses. Point three is overruled.

In its point of error four, defendant attacks the legal and factual sufficiency of the evidence supporting the submission and the jury's answer to Special Issue No. 3(1) inquiring into plaintiff's loss of earnings in the past.

Plaintiff quit a job as a Dairy Queen store manager in Killeen, Texas, to work for defendant. Ingram testified as to the salary and commissions a store manager could reasonably expect to earn—$1,450.00 to $1,650.00 per month—and the average length of tenure of most employees—three years. Plaintiff testified as to the various jobs that he had since he was fired, some of the salaries that he received, and various attempts that he made in obtaining other employment.

Viewing the evidence in the appropriate manner, we find that the evidence was factually sufficient to support the finding that plaintiff had sustained a loss of past earnings of at least the amount awarded by the jury. No error is shown in point four.

Having found no reversible error, we affirm the judgment of the trial court.

AFFIRMED.